Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br> v.<br><br>DAVID R. MENDOZA,<br><br>      Defendant. | No.  CR06-0466 TSZ<br><br>SENTENCING MEMORANDUM<br>OF DAVID R. MENDOZA<br><br>SENTENCING DATE:<br>October 30, 2009 |

## I. INTRODUCTION

Mr. Mendoza has pled guilty to one count of Conspiracy to Import more than 1,000 kilograms of Marijuana.  After a settlement conference conducted by the Honorable Ricardo Martinez, the government and the defense have agreed, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, that the appropriate sentence is a term of imprisonment of 168 months and the forfeiture of four real properties.  For the reasons given below, we respectfully request the Court impose this sentence.

## II. OVERVIEW OF THE OFFENSE

For approximately five years, ending in 2006, Mr. Mendoza participated in importing large quantities of marijuana from Canada into the United States.  Mr. Mendoza offers no

SENTENCING MEMORANDUM - 1
Case No. CR06-0466 TSZ

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
(206) 622-8000

excuse for his behavior in this case.  He takes responsibility both for his actions and for their consequences.  It is for this is the reason he has agreed to a sentence of 168 months, more than double the sentence any of his co-defendants have received.  Mr. Mendoza has also agreed to forfeit to the government four of the real properties he was developing, located at 2526 155th Place SE, Bellevue, Washington; 31726 North Spotted Road, Deer Park, Washington; 849 NW Wall Street, Bend, Oregon; and 1135 Tacoma Avenue South, Tacoma, Washington.

This case is not the first time that Mr. Mendoza has been involved in possessing and distributing drugs.  In 1989, Mr. Mendoza was sentenced to three years in custody after he was convicted in a Nevada state court for possession of a controlled substance.  In that case, he was arrested at the security gates at McCarran Airport and found to be in possession of a brick sized package containing 1,194 grams of cocaine.  After completing his sentence, Mr. Mendoza continued to be involved in distributing and importing drugs.  In 1993, Mr. Mendoza was involved in a federal conspiracy to export and distribute cocaine and hashish. In that case, Mr. Mendoza was sentenced to 70 months of confinement.  He served a portion of this sentence in FCI Sheridan, where he met William Renner, Danny Zylstra, and Philip Griner, who are all co-defendants in this case.

After his release from federal custody, Mr. Mendoza did pursue several legitimate business endeavors.  He started a construction company, ETA Construction, which developed and rehabilitated commercial and residential properties.  Mr. Mendoza also owned and ran a small, home-style Italian restaurant, Pazzo's Restaurant and Bar, in the Eastlake area of Seattle.  He is still a part-owner of Pazzo's, which is now considered a local favorite

SENTENCING MEMORANDUM - 2
Case No. CR06-0466 TSZ

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
(206) 622-8000

restaurant in Eastlake.  Prior to his arrest, Mr. Mendoza was still a fixture in the restaurant and remained close to his employees.

Nevertheless, Mr. Mendoza chose to become involved again in drug trafficking.  In this case, he was responsible for the importation of multiple loads of marijuana totaling about 1,000 kilograms.  Mr. Mendoza employed others to help deliver and receive the marijuana, and to redistribute it to other locations within this District and elsewhere.  Nine other people have been charged with crimes for their involvement in this importation activity.  Of those nine, eight people have pled guilty, seven have been sentenced, and one remains at large.

After several people associated with Mr. Mendoza were arrested in 2006, Mr. Mendoza ceased his importing activity, left the United States, and went to Spain.  He was aware at the time that he was under investigation by United States authorities.  On May 17, 2007, Mr. Mendoza failed to appear for his scheduled arraignment, and on May 22, 2007, a bench warrant was issued for his arrest.  Mr. Mendoza was arrested by Spanish law enforcement on June 5, 2008, and he voluntarily waived extradition on October 8, 2008.  Mr. Mendoza initially fought extradition in the Spanish National Criminal Court, Criminal Department Section Two, after his arrest on June 5, 2008.  On October 8, 2008, Mr. Mendoza voluntarily waived extradition after the Spanish Court ruled that Mr. Mendoza would be extradited to the United States on the following three conditions:  (1) that Mr. Mendoza not be tried for the crime of "structuring currency transactions" listed as Count 7 in the May 22, 2007, Superseding Indictment; (2) that Mr. Mendoza not be sentenced to life imprisonment; and (3) that Mr. Mendoza be permitted to serve his sentence in Spain, should he request it.

Mr. Mendoza was transported back to the United States in May, 2009.  He appeared before this Court on May 4, 2009, stipulated to detention, and remains detained at the SeaTac

SENTENCING MEMORANDUM - 3
Case No. CR06-0466 TSZ

Federal Detention Center pending sentencing in this matter.  On June 19, 2009, the parties

entered a Rule 11(c)(1)(C) Plea Agreement, and Mr. Mendoza pled guilty to Count 1,

Conspiracy to Import more than 1000 kilograms of Marijuana, in violation of 21 U.S.C. §§

952(a), 960(a)(1) and (b)(1)(G), and 963.  In their plea agreement, the parties agreed that the

appropriate sentence for Mr. Mendoza's conduct is a term of imprisonment for 168 months

and the forfeiture of four real properties.

## III.      BACKGROUND AND CHARACTER

### A.      Family and Personal History

David Mendoza was born in Los Angeles on July 24, 1964 to Maria and Ivan

Mendoza.  His father, Ivan, was a commercial airline pilot who travelled extensively.  Mr.

Mendoza's mother Maria was born and raised in Mondragon, Spain.  She came from a large

and close family of eleven brothers and sisters, all of whom still live in Spain.  Maria

immigrated to the United States shortly after marrying Ivan.  In 1967, Ivan Mendoza, who

was only 33, died suddenly of a heart attack.  After her husband's death, Maria moved the

young family to Seattle to be closer to family friends.  In 1972, Maria married Albert

Emmanuel, an engineer at Boeing.  Mr. Emmanuel adopted Mr. Mendoza and his brother and

raised them as his own children.

Mr. Mendoza attended primary and secondary school in Seattle.  He attended

McGilvra Elementary School, Meany Middle School, and graduated from Garfield High

School in 1982.  In high school, he played soccer and basketball and was class president.

After graduating high school, Mr. Mendoza attended University of Washington, graduating

in 1987 with a bachelor of arts degree in International Business.

SENTENCING MEMORANDUM - 4
Case No. CR06-0466 TSZ

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
(206) 622-8000

Although Mr. Mendoza was born in the United States, he has always had very close ties to Spain, and has long considered Spain his home.  His mother spoke Spanish at home.  He spent every summer with his relatives in Guernica, Spain.  After graduating from college, Mr. Mendoza continued his regular travels to Spain.

Mr. Mendoza is clearly capable of legitimate business activity.  As noted above, he started and ran several successful small businesses in the Northwest.  In addition, in 1997 Mr. Mendoza opened a store in Spain, Broker's Clothing Company, selling clothes imported from the United States.  Even after he sold his share of that business in 2002, Mr. Mendoza continued to travel between the United States and Spain several times a year.

Mr. Mendoza married Elizabeth "Liz" Ahnert in 2006.  They have two sons, Nikolas and Iñigo, who are one and two years old, respectively.  Both sons were born in Spain.  Shortly after Iñigo was born, Mr. and Ms. Mendoza learned that he had Down Syndrome.  Liz did extensive research on Down Syndrome and learned that there was a very progressive program in Spain that believed in early intervention and stimulation for babies born with Down Syndrome.  Through this early intervention, Iñigo would be able to have a more autonomous life.  While living in Spain, Iñigo worked with a private therapist who came to the house twice a week.  He also attended classes with other Down Syndrome children at a local therapy center specializing in this treatment method.  There are no similar programs in the United States for Iñigo.  When Mr. Mendoza is released from custody, he wishes to live in Spain with his family so that he can be close to his maternal family and raise his sons near his Spanish relatives.  He plans to someday open an organic vegetable and fruit business.

**B.**     **Personal Character**

In reaching a fair sentence, the Court must consider "the history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).  In his letter to the Court, Mr. Mendoza describes his conduct as motivated by a combination of ambition, risk-taking, greed, and deception.  His ability to admit character flaws that led him to import marijuana even after he had been to prison is a positive sign of his decision to change his lifestyle.  Mr. Mendoza's life is also characterized by concern for those less fortunate than himself.  As demonstrated by the letters of support submitted to the Court, people who come into contact with Mr. Mendoza— people of all backgrounds and stations in life—recognize kindness and generosity as his defining characteristic.

Mr. Mendoza's family recognizes his generosity as an essential feature of his character.  Isabel Beitia, Mr. Mendoza's aunt, stated that:

> David has throughout his whole life been a generous, respectful, kind and loyal person that is why we, his Spanish family (which is big) and friends love, respect and trust him. He is considered a real friend, everybody appreciate his generosity and loyalty, it has always been one of David's characteristics to support the one that needs help.

*See* letter of Isabel Beitia, attached as Exhibit A.

Mr. Mendoza's employees recognize generosity as an essential feature of his character.  Mr. Mendoza ran his businesses in a way that reflected his concern for those less fortunate than him.  An employee of Pazzo's wrote in her letter to the Court:

> Dave has always done everything in his power to help those in need. He regularly takes in homeless people, allowing them to live on his property and finding them some employment until they can get back on their feet. He puts compassion over business interests.

SENTENCING MEMORANDUM - 6
Case No. CR06-0466 TSZ

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
(206) 622-8000

*See* letter of Taunya Mattson, attached as Exhibit A.  Similarly, Laurie King, a friend

of Mr. Mendoza's and employee at Pazzo's, wrote that:

> David's kindness and goodwill extend beyond his immediate circle. He would
> never turn his back on someone in need. David actually takes the time to get
> to know those less fortunate in our community. On more than one occasion,
> David has taken a complete stranger into his home, someone who needed a
> warm place to sleep, or medical attention, or a hot meal. I can honestly say
> that I do not personally know anyone else who would do the same in this day
> and age.

*See* letter of Laurie King, attached as Exhibit A.

A friend of Mr. Mendoza has shared with the Court one illustrative incident.  Mr.

Mendoza, while at a restaurant, made the acquaintance a young waiter with a facial

deformity.  He had no family relationship to the young man, nor any friendship longer than

the afternoon, but nevertheless donated money to help pay for the man's reconstructive

surgery.  *See* letter of Debi Morris, attached as Exhibit A.  We respectfully submit that the

positive aspects of Mr. Mendoza's character merit consideration in determining a fair

sentence for his less meritorious conduct.

## C.  Acceptance of Responsibility

Mr. Mendoza recognizes that his actions have hurt his family and friends.  He takes

full responsibility for his actions, and feels deep and genuine remorse for the pain he has

brought to his wife, his young children, and his elderly parents.  Several writers noted that

they perceived Mr. Mendoza to have changed himself after becoming a husband and a father.

While in Spain, he poured himself into caring for Iñigo.  Felipa Soto, a family friend,

describes Mr. Mendoza as "the core of his family."  *See* letter of Felipa Soto, attached as

Exhibit A.  His wife, Liz, said that:

SENTENCING MEMORANDUM - 7
Case No. CR06-0466 TSZ

SCHROETER, GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA  98104
(206) 622-8000

> When our son was born with Down syndrome I was in shock. David didn't skip a beat. David approached this new challenge with acceptance, courage and loving kindness right from the moment Iñigo was born. I was terrified. He gave me the confidence to see my son for the blessing he is.

*See* letter of Elizabeth Ahnert, attached as Exhibit A

Although he may have been the core of his family, Mr. Mendoza recognizes that, as a result of his own actions, he will not be able to be there for his wife or children.  As Mr. Mendoza's aunt said:

> I believe that getting married and having two children has influenced his character, and that he feels a strong responsibility which is aggravated by the deep sadness he feels at not being able to be with or to help his family.

*See* letter of Inaki Lasagabaster Herrarte, attached as Exhibit A.  According to Mr. Mendoza himself, "my little boys will be well into their teen years, by the time I am back into their lives.  There is no greater impact of guilt or remorse, a son and father, can carry on his conscience."  *See* letter of David Mendoza, attached as Exhibit B.  Similarly, Mr. Mendoza recognizes that although his parents provided him with a supportive and loving childhood, "I have shamed, embarrassed, and to say the least, tremendously disappointed my parents and family.  My actions have also financially disrupted what was supposed to be their 'Golden-Years'; and for this I am deeply sorry too."  *Id.*

## IV.    SENTENCING ANALYSIS

### A.    Legal Principles

18 U.S.C. Section 3553(a) provides that a sentencing court shall "impose a sentence sufficient, but not greater than necessary to comply" with certain purposes, including:

> (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense,
> (b) to afford adequate deterrence to criminal conduct,
> (c) to protect the public from further crimes of the defendant, and

SENTENCING MEMORANDUM - 8
Case No. CR06-0466 TSZ

(d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).  Section 3553(a) further directs the court to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the need to avoid unwarranted sentencing disparity, and the need to provide restitution, where applicable.

After the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005), the guidelines are entitled to no particular deference.  They are but one factor to be balanced among many.  As the Supreme Court recently reiterated in *Nelson v. United States*, 555 U.S. ___ (January 29, 2009), "the Guidelines are not only not mandatory on sentencing courts; they are not to be presumed reasonable."

The parties have agreed, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that the appropriate sentence for Mr. Mendoza is a term of imprisonment of 168 months and the forfeiture of four pieces of real property.  The Probation Office agrees that this is the appropriate sentence.  The analysis below shows this sentence is appropriate and more than sufficient to meet the goals of Section 3553(a).

**B.      Guidelines Calculation**

The defense generally agrees with the United States Probation Office's assessment of the appropriate Guideline level, with the exception that Mr. Mendoza should receive the benefit of his acceptance of responsibility.  The Probation Office calculated Mr. Mendoza's base offense level under U.S.S.G. § 2D1.1 as 32, with upward adjustments of two points under U.S.S.G. § 2D1.1(b)(2) for use of an unscheduled aircraft to import a controlled substance, four points under U.S.S.G. § 3B1.1(a) for his leadership role in the offense, and

SENTENCING MEMORANDUM - 9
Case No. CR06-0466 TSZ

two points under U.S.S.G. § 3C1.1 for obstructing justice. However, the parties have agreed that if Mr. Mendoza accepted responsibility for his conduct, pursuant to U.S.S.G. § 3E1.1, then his offense level should be reduced accordingly. Because Mr. Mendoza has accepted responsibility, his offense level should therefore be reduced by three points, from a level of 40, to a level of 37. Combined with Mr. Mendoza's criminal history level of II, this results in a Guidelines sentencing range of 235 to 293 months.

### C.    Factors Supporting the Sentence

As noted above, the prosecution and defense have agreed that the appropriate sentence in this case is a term of imprisonment of 168 months and the forfeiture of four real properties. This sentence is less than the guideline range for Mr. Mendoza's conduct. Nevertheless, we submit to the Court that this sentence is both fair and entirely sufficient to further the objectives of Section 3553.

Section 3553 mandates a sentence sufficient but not greater than necessary, "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a). If the Court imposes the sentence agreed to by the parties, David Mendoza will lose the best part of his life. He will lose the opportunity to see his children grow up. He will lose the opportunity to share his parents' company in their twilight years, and will most likely receive news of their death while he is in prison. He will lose the company of his loving wife after only several years together. He will lose the opportunity to provide for his family in the way in which he was provided for. Any one of these punishments, taken alone, would be a heavy blow for Mr. Mendoza. Taken together, they are devastating. Taken together, they are also fair. Mr. Mendoza imported a substantial amount of marijuana into the United States. He involved his friends and associates, several

SENTENCING MEMORANDUM - 10
Case No. CR06-0466 TSZ

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
(206) 622-8000

of whom have already been sentenced to prison terms.  His actions merit punishment and a sentence of significant length to reflect the seriousness of the offense.  A prison term that deprives Mr. Mendoza of his best years without a doubt comports with the sentencing goals of Section 3553 by reflecting the seriousness of the offense, promoting respect for the law, and providing just punishment.

The proposed sentence similarly advances the other goals of Section 3553.  A sentence of fourteen years in prison is enough to deter the same conduct in others.  We submit to the Court that a person, similarly situated to Mr. Mendoza, who weighed the potential for making money by importing marijuana against the risk of spending almost a decade and a half behind bars would and should be deterred by Mr. Mendoza's example. Further, the public will not need to be protected from Mr. Mendoza beyond the duration of his sentence.  Mr. Mendoza is now 45 years old.  Fourteen years from now, he will be nearly 60 years old, with children nearing college age.  We respectfully submit that Mr. Mendoza's motive and opportunity for additional crimes will be minimal at the conclusion of his sentence.

## V.       CONCLUSION

David Mendoza has demonstrated a willingness to violate the laws of the United States for which he deserves significant punishment.  At the same time, it is clear that he has a generous character when it comes to dealing with those less fortunate than himself, and that he feels genuine remorse for his criminal conduct.  The flaws and strengths of his character have created a tragic situation for Mr. Mendoza and his family.  Mr. Mendoza has entered into an agreement with the government that demonstrates a willingness to accept significant consequences for his criminal activity.  We respectfully request that the Court impose the

SENTENCING MEMORANDUM - 11
Case No. CR06-0466 TSZ

1    sentence agreed to by the parties—a term of imprisonment of 168 months imprisonment and

2    the forfeiture of the four real properties described in the plea agreement.

3
     DATED this 26th day of October, 2009.
4
                                        Respectfully submitted,
5

6                                        s/ Colette Tvedt
                                        COLETTE TVEDT
7                                        JEFFERY P. ROBINSON
                                        Counsel for Mr. Mendoza
8                                        SCHROETER, GOLDMARK & BENDER
                                        810 Third Avenue, Suite 500
9                                        Seattle, WA  98104
                                        Phone:  (206) 622-8000
10                                       Fax:  (206) 682-2305
                                        Email:  tvedt@sgb-law.com
11                                               robinson@sgb-law.com

12

13

14

15

16                        CERTIFICATE OF SERVICE

17         I hereby certify that on October 26, 2009, I electronically filed the foregoing with the

18   Clerk of the Court using the CM/ECF system which will send notification of such filing to

19   the attorneys of record for the United States of America, Assistant United States Attorneys

20   Susan Roe and Roger Rogoff.

21

22                                       s/ Andrea Crabtree
                                        ANDREA CRABTREE
23                                       Paralegal
                                        SCHROETER GOLDMARK & BENDER
24                                       810 Third Avenue, Suite 500
                                        Seattle, WA  98104
25                                       Phone:  (206) 622-8000
                                        Fax:  (206) 682-2305
26                                       Email:  crabtree@sgb-law.com

SENTENCING MEMORANDUM - 12                   SCHROETER, GOLDMARK & BENDER
Case No. CR06-0466 TSZ                       500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
                                                        (206) 622-8000

EXHIBIT A

Honorable Thomas S. Zilly
U.S. District Court Senior Judge
Seattle, Washington  98104


October 1st, 2009


  I am Elizabeth Ahnert, David Mendoza's wife.  I would respectfully like to try to illustrate the human aspect of David, and our life together. Here is a bit of the groundwork. We have two sons together. Inigo who is 2 years old and Nikolas, who is 10 months old.  Inigo was born with Down syndrome. David and I met in Seattle in 2004.  It was not until he had left the States that we began a relationship. He left the USA in the late spring of 2006.


   David had just ended a bad relationship, and was ready to move into a new chapter of his life. He wanted a family of his own and a change. He also wanted to be near his aging and terminally ill Uncle, Angel, who was like a father to him. That was the time he chose to contact me again and asked me to come to visit him in Spain. We fell in love and we quickly understood we wanted the same things out of life. We knew we would be married and have a family together. By December of 2006 we were engaged, I was pregnant, and David was then indicted.  David had been honest with me about his mistakes in his past.


   We lead a very wholesome life in Spain. He grew up there and is well known. I believe that sort of old-fashioned community builds character, and responsibility. You walk through the ancient town, through the market, or into any business and they know you by name. I am trying to illustrate that it is a very different life there. We have a vegetable garden, fruit trees and chickens. The family is close and congregate for lunch every day. Imagine having lunch with eight or more family members every afternoon. It is not the sort of life you would imagine a man who has pled guilty to these charges to lead. He is hard-working, involved in family and his community… He is a man who is generous with his time and his heart. David truly cares about others, even strangers. I always gave him a hard time about being too trusting and

1

compassionate. Never the less, he is a good husband and great father. We continue to feel connected even though he has been incarcerated for 16 months now.

When our son was born with Down syndrome I was in shock. David didn't skip a beat. David approached this new challenge with acceptance, courage and loving kindness right from the moment Inigo was born. I was terrified. He gave me the confidence to see my son for the blessing he is. There is an amazing Down syndrome foundation that provides people with Down syndrome with physiotherapy, speech therapy, community and opportunity. Although David and I were a team raising our son, it was David who took Inigo to see a therapist twice a week for two hours. The physiotherapist would teach David the activities and exercises to do with Inigo at home. In Vancouver, where the boys and I are staying until David goes home, Inigo was seeing a therapist every 6 weeks. But the Canadian Medical Services Plan cut our access to government services and health care because we are residents of Spain. It is important Inigo resumes his early childhood intervention.

David wants to take responsibility for what he has done. The most important thing for us as a family is his return to Spain to serve his sentence. I am very grateful to the Audiencia Nacional judge who made it a condition of David's extradition that David be returned home to serve his prison sentence. His remark was that David's family should not be punished for something he did. David had asked the Judge for the opportunity to be a father figure to his sons.  The Queen of Spain wrote a letter to the Minister of Justice in Spain to ask that he follow David's case, and to ensure he is returned to Spain in a timely fashion after sentencing. She wrote it as a mother, and a Queen. I am grateful to her also.

During the course of this prosecution David continues to be a fountain of strength, courage and positive energy for our family. I have seen him endure hardship and not complain. He keeps a positive attitude and looks forward to being home with our sons and myself.  While he has been incarcerated this last 16 months Angel, his beloved uncle passed away. Our beautiful son Nikolas was born. David carries the guilt and regret of not being available to us when we needed him most. His focus is on taking responsibility for his past, getting this behind us, and moving forward as a strong, loving family. He

strives to be a capable, dedicated, loving father and husband.

  Thank you for taking the time to read my letter of support of my husband.

Warmest Regards,

Elizabeth Ahnert

M. Isabel Beitia


Bizkaia
SPAIN


Honorable Thomas S. Zilly
U:S: District Court Senior Judge
Seattle
Washington 9810


Honorable Judge Zilly,

With regards to David Mendoza, and being aware that he will be sentenced on 30th October, I would like to take this opportunity to share with you what relationships and opinions we, his family and friends here in Spain, have of David. At the same time I plead with you that the sentence that you intend to deliver will be as short as possible so David can enjoy being with his wife and sons again.

I, M. Isabel Beitia, was married to his uncle, Felix Herrarte, with whom I am currently divorced. I got to know David in 1966 when he was only 2 years old. From then on, and still today, I consider David like a son of mine (the reasons for this will be explained later on) and I love him with the whole of my heart.

Throughout David´s childhood and youth, he and his brother would come to the Basque Country and spend their summer holidays here at their aunt´s house (the sister of their mother), and as we live nearby, they used to play daily with my children even though they were much younger than David. My children felt proud of him, and me and my husband were delighted with the influence, in all kinds of way, that David and his brother had on our children. We still feel this way.

When my son, Alexander Herrarte, was 10 years old , he spent a school year, 1979-80 living with David, his brother and their parents Al and María Emanuel, and later on the school year 1986-87 as well.

My second son Andrés Herrarte, like his brother, at 10 years old went to live in Seattle during the school year of 1981-82, and later on in 1988-89.

At first we were mainly interested in our sons learning English, but as time passed we realised that our sons had not only been enriched academically through their experience but also in terms of social aspects and most importantly through the teaching of values by the Emanuel family (Al and María, Ivan and David). All of this later on has benefited my sons in their studies, work and social relationship in Spain and abroad. It was a privilege for them to be able to have these experiences, and without doubt in my opinion, the most important ones in their lives.

I was a teacher in secondary school, though I am now retired, through experience I know how much I should value what this family did for my sons. Especially at that time as Spain had recently come out of a dictatorship and there were very few people who had the privilege to acquire an North American education, therefore it is not strange that my sons consider David as a brother.

David has throughout his whole life been a generous, respectful, kind and loyal person – that is why we, his Spanish family (which is big) and friends love, respect and trust him. He is considered a real friend, everybody appreciate his generosity and loyalty, it has always been one of David's characteristics to support the one that needs help. We used to see him a lot before going to jail, and we have continued to visit him a lot while in prison in Madrid, and he is still the same generous, kind and respectful person. What we do notice though is his remorse and worries for his sons.

It is such a misfortune that he is going to jail for himself, for his family, for us, but mostly for his sons and especially for his son Iñigo. Here in Spain, David worked in organic agriculture and after his son Iñigo was born with Down's syndrome, his second job was to dedicate himself to Iñigo, consulting specialised doctors, undertaking research into help and early treatments. As his wife Elizabeth was pregnant with his second child, Nicolás, and that Iñigo was a big toddler and quite heavy, it was natural David took most of the responsibility for the child care as well as for carrying out the daily psychomotor exercises, set weekly by the specialist medical centre.

Iñigo was only 10 months when David was put into jail in Spain. David's wife and Iñigo then came to live at my house. We thought it would be better if they lived with us, apart from us being able to help with out with his exercises, he could also live with my twin grand children one year older than him. It was good for Iñigo to spend time with my grand children.

It is great misfortune that Iñigo and Nicolás cannot enjoy being with their father, because firstly he has got some great qualities which are essential for the education of his children, and secondly especially for Iñigo, for the reasons mentioned before.

Because of all this, Honorable Judge Zilly, I have got no doubt that you will take David's family situation into account when sentencing him.

Many thanks for your attention.

Yours sincerely

M. Isabel Beitia

Gernika, 5th October 2009

Honorable Thomas S. Zilly
U.S. District Court Senior Judge
Seattle, WA  98101

September 14, 2009

Honorable Judge Zilly,

David Mendoza Herrarte has been my employer for sixteen years, my friend for thirteen years, and until recently, had been my landlord for two and a half years.  Throughout the time I have known him, David has shown himself to be a generous, fair, and hardworking boss and landlord; a loyal, dependable, and compassionate friend; a dedicated son; and a doting husband and father.

As the owner of Pazzo's restaurant in Eastlake's tight-knit community, David is well liked and respected by customers, employees, and Eastlake business owners alike.  In the topsy-turvy world of the restaurant business, Pazzo's has stood the test of time because of the welcoming, caring, and positive environment that David has created over the years for his employees (many whom have worked at Pazzo's for over a decade) and his patrons alike.  Additionally, Pazzo's generously donates to local charities like Teen Feed, which provides food and other essentials to homeless youth, and participates annually in "Dine Out for Life," a benefit for people living with HIV and AIDS.

As a friend, David has come to my rescue many times over the years.  Whether I have been stranded with a flat tire in the middle of the night, needed help moving a half of a dozen times, or just needed good advice, I have always been able to count on David.

David's kindness and goodwill extend beyond his immediate circle.  He would never turn his back on someone in need.  David actually takes the time to get to know those less fortunate in our community.  On more than one occasion, David has taken a complete stranger into his home, someone who needed a warm place to sleep, or medical attention, or a hot meal.  I can honestly say that I do not personally know anyone else who would do the same in this day and age.  David truly is the "kindness of strangers" that you hear about.  His optimism, generosity, and compassion are infectious, and I am certain that I am a better person for having known him.

It is my understanding that a deal has been made and that a decision is already set for the amount of time that David will spend in federal prison.  With all due respect, as a tax payer, voter, and an active member of society, I am having a very difficult time comprehending a fourteen year sentence for a marijuana offense, especially for someone who has never

committed a violent act or stolen anything from anyone.  As someone who knows David personally, I think that a fourteen year sentence is unethical and is nothing short of a tragedy for this man and his family.  David is a great hands-on father, husband, son, employer, and I am extremely proud to call him my friend.  I feel like society would be better served by having David sentenced to time served and to be allowed to return to his family where he belongs, where he is needed to help raise his small boys.

Thank you for your time and consideration, Your Honor.  Please feel free to contact me if you have further questions.   I am happy to speak on David's behalf at anytime, including at his sentencing.


Laurie C. King

Seattle, WA

eman ta zabal zazu



**Universidad del País Vasco/Euskal-Herriko Unibertsitatea**
**U.D. Derecho - 48940 Leioa**
**Iñaki Lasagabaster Herrarte**
**Catedrático de Derecho Administrativo**

Honorable Thomas S. Zilly
U.S. District Court Senior Judge
Seattle, Washington 98101

Honorable Thomas S. Zilly,

I have known David since he was little. My mother and his mother are sisters. He used to come and spend summers in the Basque Country, and that's when I got to know him. I cannot specify the exact year, only that I've known him since he was a child.

We were regularly together, as he liked to spend time with us even though we were older than him. He was always cheerful, fun-loving, kind and the sort of person who's company we really enjoyed.

I've always had the impression that David had a good relationship with his family. He got on well with his brother, mother and father as well as with his mother's sisters, with whom he used to stay on his visits to the Basque Country. At family get-togethers in summer David was an essential ingredient, the life and soul of the party at mealtimes. That's why his aunts in the Basque Country were especially fond of him, and also why they feel so distraught and despondent now about the predicament he is in.

1

David's good character can be seen in the way he has taken on board his son Inigo's condition. From the very beginning he has shown fortitude and demonstrated a remarkable concern regarding his son's well-being. He has taken him to a specialist practitioner and to psychologists who have advised the family on how to raise him. I believe that he, together with his wife, has undertaken all the responsibilities that correspond to him and done so impeccably.

Apart from his behavior towards his family, I think it's also worth mentioning his relationship with other people around him. He has a great many friends in the Basque Country. He has a way with people, knows how to get on with them and has always been a good mediator in quarrels between friends, acquaintances or neighbors. He's well known for his kindness and for the fact that he's always ready to lend a hand or provide solutions for problems that come up. He could be called a good citizen, a good friend, a good person.

Despite his detention and the gravity of the accusations, it seems to me that David has shown remarkable strength of character regarding his situation as well as a great deal of distress. This distress is related to the fact that right now he is married with two children, one of whom has Downs Syndrome. Being powerless to do anything regarding the well-being of his children who so need him now - in particular the oldest one - is causing him great anxiety. The deeds for which he is accused are prior to his marriage and fatherhood. I believe that getting married and having two children has influenced his character, and that he feels a strong responsibility which is aggravated by the deep sadness he feels at not being able to be with or to help his family.

I work in the legal profession, in administrative law. While criminal law is not my speciality, I am aware of the importance of the principles regarding crime and punishment. The objective of sentencing and the whole prison system is the reintegration of the offender into society. I believe that David, because of his character as well as his new family situation, is someone who can reintegrate. His small children and his wife form the main motives for this reinstatement. One must also not forget  David's personality. He is calm, warm and has strong ties with all his family. His parents in the USA and his many relatives in the Basque Country are

another motive. Personally, I am willing to do whatever is necessary for David to return to a normal life in society like anybody else.

In spite of the charges against him, in my opinion David is perfectly ready to return to a normal life in society. On the occasions that I have spoke to him in prison he has come across as a changed man, who feels responsible for the situation he finds himself in, unable to help his wife and children, in particular his oldest son, Iñigo.

I believe he is sincere when he talks about his concern for his family, and I am fully convinced that he wants to start a new life and play an active role in his relations with those around him. His oldest son's condition has led him to get involved with charities working on behalf of those with special needs. The concern and interest he shows towards those with special needs, particularly those with Down's, shows us that his willingness to change his life is genuine.  Regarding young people with special needs, his involvement could be valuable, as he is a dynamic and energetic person.

In conclusion, I would like to say that David is a good person, someone who could be useful to society. His family circumstances have led him to shoulder the responsibility of bringing up a son with Down's Syndrome as well as attending to his other son and helping his wife. He could also play a useful role in helping raising awareness of the challenges involved in bringing up children with special needs. He has much to give. This is how I see him. I say  this as his relative and also as a jurist.

Respectfully,

Iñaki Lasagabaster Herrarte
Profesor of Constitucional and Administrative Law
Basque Country University



Bilbao, 2009/IX/03

3

Your Honor,

I have been employed by Dave Mendoza for fourteen years.  I work as a server at Pazzo's.  While I was initially skeptical about him, over the years, I have come to regard Dave highly as a compassionate human being.  While we all have this potential, it is rare to find someone who acts as openly according to the dictates of his conscience.

Dave has always done everything in his power to help those in need.  He regularly takes in homeless people, allowing them to live on his property and finding them some employment until they can get back on their feet.  He puts compassion over business interests.  If someone down on their luck ever came into the restaurant looking for a meal, or some temporary shelter from the weather, I always felt confident that he would allow me to give them a pizza and let them stay a while to warm up.  Dave was always willing to give his fellow ex-convicts a second chance by giving them a job.  Many of these people tried to take advantage of him, but this never seemed to effect his open-mindedness when it came to seeing the goodness in people.

These policies did not make my job easier, and I used to be frustrated at having to deal with people deemed less then worthy by society.  Over the years, however, Dave has helped me to see that it is more important to put human decency over convenience.

While the laws of commerce will vary based on history and culture, the laws of responsibility toward our fellow human beings remain constant throughout time and the world: feed the hungry, clothe the naked, shelter the homeless.  These are laws that most of us disregard, and if we lived in a truly civil society, it is the rest of us who would be facing consequences for this disregard, not Dave Mendoza.

Please take my thoughts into consideration.

Respectfully,

Taunya Mattson

I am Maria Teresa Herrarte, the mother of David Ronald Mendoza.  I was born in 1931 in Barrio Garagarza, Mondragon, Guipuzcoa, Spain, the sixth child in a family of eleven children: José, Justo, Carmen, Gregoria, Maria, Maria Teresa, Encarnacion, Luis, Javier, Felix, and Jesus. I was raised in a traditional close family, and during the week participated in all aspects of life on my grandparents' farm. I continued my schooling until my mother died when I was fifteen years old. At that time, my youngest brother, Jesus, was three. I then assisted my grandmother on the farm, and shared the responsibility for raising Jesus, while my older brothers worked in the fields, and my sisters lived in the town.

At age twenty-five, I moved to France to live with a French couple, and attend school to learn French. After two years in France, I left for the United States to work in the British Embassy in Washington, D. C. as caretaker for the Ambassador's children. I later met Ivan Mendoza there, was married, and moved to Los Angeles, California.

While living in Los Angeles, we had two children, Ivan Alexander and David Ronald. In 1966, when Ivan and David were three and two years old, their father took them to Spain where they remained for a month with family members, while their father returned to the United States to have surgery. During that visit, David was baptized in Guernica, because his aunt, Encarna, and her husband, Angel, wanted to be his Godparents. Six months later the father died suddenly, leaving me alone with the responsibility for raising the two children.

In 1970, I moved the family to Seattle, Washington to have the emotional support of a close friend from Bilbao. Ivan and David traveled to Spain with me in 1970; and traveled unaccompanied in 1973 and 1976 to stay with their relatives for the duration of their summer vacations from school.

I met Albert Francis Emanuel in Seattle, and we were married in 1972, with Albert assuming fatherly responsibility for Ivan and David, who were nine and eight. Albert was an engineer with The Boeing Company, had been a United States Air Force pilot, and a combat veteran of the Korean War. Ivan and David continued their education in the Seattle school system.

While attending the Seattle public school system, David traveled to Spain in 1979, 1980, 1981, and 1982. He graduated from high school in 1982.

David entered the University of Washington to study Business Administration, and made a number of trips to Spain, one of which was to form a partnership, to open a discotheque business. He graduated in 1989 with a Bachelor of Arts Degree in Business Administration. He later formed another partnership in Spain for the purpose of importing clothing from the United States.

1

In the years since graduation from the University, David has made frequent visits to Spain.

David is fluent in both the English and Spanish language. An effect of David's life-long intimate association with his large Spanish family and many friends, and his deep affection and affinity for the Spanish culture, has been an often-expressed desire to reside in Spain. Prior to his marriage, when David was in Spain he had always resided with his aunt, Encarna, who is generally regarded by family and friends as his second mother.

In the United States, David has been involved in the acquisition and remodeling of older buildings, energetically learning both the business aspects as well as the trade skills needed. He has worked side-by-side with all of the skilled craftsmen, earning their respect and admiration for both his natural skills as a craftsman, and his intense devotion to the quality of the result.

He is known for his concern for the less advantaged, and has been extremely generous in assisting those with whom he comes in contact. One building he owns is adjacent to a shelter for the homeless. In an alley behind his building, David has often provided a barbeque on the weekend for those who are in the vicinity.

David went to Spain for a visit in the fall of 2006. While there, he learned that the United States Department of Justice indicted him for importing marijuana from Canada into the United States. David attempted to negotiate the conditions for his return to the United States, and made what he felt was a fair offer, but was rejected. Meanwhile, to fulfill a long-held desire, he successfully applied for his Spanish citizenship. He now has dual United States and Spanish citizenship.

He remained free in Spain until the United States implemented his extradition process from Spain, and was incarcerated in Madrid while negotiations proceeded. He engaged a Spanish lawyer to assist in the negotiation for his extradition. Some of the Spanish Judges reviewing the case presented against David apparently felt it was inappropriately severe. In response to the extradition request, the Judges proposed extradition conditions thought to mitigate the charges. Among the conditions were:

1. No life sentence;

2. After sentencing in the United States, David was to return to Spain to serve his sentence in the Spanish prison system.

2

Prior to, and during his incarceration in Spain, David and his wife, Elizabeth, had two children; Iñigo and Nikolas. Iñigo is a Down Syndrome child. It is his wish to remain in Spain to be close to his wife and children, and to raise his children in close association with his extended Spanish family. I, his mother, fully support that desire.

I support the conditions of the Spanish Judges, so even while David is incarcerated he may have frequent contact with his wife, be able to properly bond with his children, and enjoy the continued support of his large family and many close friends.

3

I am Albert Francis Emanuel, a citizen of the United States, husband of Maria Teresa Emanuel, and the father of David Ronald Mendoza. I was born January 18, 1929 in Baltimore, Maryland, the fourth child of six. As a child I experienced directly the effects of the "Great Depression" in this country. My mother died of a long-term illness when I was fourteen years old. I continued my high school education, graduating in 1948, after having to leave school for one year to help support our family.

At age twenty, I was accepted as a candidate for the United States Air Force Pilot Training Program, and served for four years, flying fifty-two combat missions in the Korean War.

I graduated from the university as an electrical engineer in 1958. I was employed by The Boeing Company, and retired in 1999. I ended my career at Boeing having worked as an Aviation Safety Analyst for about fifteen years.

I include this brief autobiography to signify my strong affiliation and identification with my country. I am aware of my son David's long-standing identification with Spain, and his extensive family ties there. I fully support his desire to reside in Spain, and raise his family there.

His mother is now seventy-eight years old, and I, eighty. We probably will not have too many years to devote to his family. We feel the extensive family connections in Spain will be more enduringly supportive of his young family.

4

2009-09-17


Honorable Thomas S. Zilly:


My name is Debi Morris. I am a teacher in Playa del Carmen, Mexico. I met Dave Mendoza through a mutual friend, here in Mexico. We have been friends for the past 6 years.

One of the things that always made an impression on me was Dave's kind-heartedness and generosity. Not only is he always friendly and helpful by nature; but he is genuinely concerned with the people around him. I remember one young man in particular, who we met at a restaurant one afternoon. This waiter, who had a facial deformation, touched Dave's heart. Through a philanthropic, non-profit organization called, Angel Notion, Dave made donations for the waiter (as well as other people) to have surgery. He has made a difference in several peoples' lives; some of which he knew personally and others he had not known. Although he does not live in Playa del Carmen year-round, he has definitely been an integrated part of this community.

Over the years, I have known Dave to be dedicated to his work, as well as his family and friends. A few years ago, he began talking about his desires to be married and raise children. He was very confident in being ready for this new season of life. I was excited for him because I knew he would be a gentle, compassionate, loving husband and father; of which he has become. I strongly believe that Dave belongs with his wife, Elizabeth, and their children. If there is anything that I personally can do to help him and his family to return to a normal life, I will be happy to do so.

Please feel free to contact me if you have any further questions.

Sincerely,

*Debi Morris*

Debi Morris

SOULES PROPERTIES, INC.

September 10, 2009

Honorable Thomas S. Zilly
U.S. District Court Senior Judge
Seattle, Washington  98101

Re: David Mendoza

Dear Judge Zilly:

We own a small commercial building on Eastlake Avenue in Seattle that has been home to Pazzo's, a neighborhood restaurant and bar, for nearly twenty years. David Mendoza has been a principal in the corporation that owns Pazzo's that entire time. Over time, he emerged as the leader of the group and majority owner of the company. The Eastlake community has supported the restaurant with continued patronage.

David has always been reliable, making sure the business was well run and in compliance with all of the lease conditions. Because of his construction and real estate experience, he looked after the building for us. He has done several repairs to the property over the years, only asking us to pay for materials. In short, he has been everything a property owner could wish for from a business owner and operator.

I realize David has been charged with a serious crime, which came as a shock to me. I have met some characters in my day, and David never struck me that way. When he said he would do something, he followed through. I could always count on him. I hope you will consider David's character, his family and what I believe are his excellent chances of leading a lawful and productive life after being in custody when you decide his sentence.

Respectfully,

Scott Soules, V.P.

September 10th, 2008

Honorable Thomas S. Zilly
U.S. District Court Senior Judge
Seattle, Washintong 98101

To whom it may concern:

I met David in 2000 in Playa del Carmen, Mexico; through a fiend. We have become
very good friends and stayed in touch over passed decades.

I am certain that he has been a responsible parent and husband and I am aware that his
family has always been his priority. He told me this in numerous conversations we had;
because of this I find very sad and disappointing that he should be forced to spend time
apart for his family.

Even tough he has not been able to spend much time with his children, he is desperate
in doing so, he is the core of his family. I am certain that his wife Elizabeth would agree
in this and wished he could be reunited with them to assist her in raising the children.

Our relation was friendly; thus I know him as a very charismatic, noble and caring
person whom I very much appreciate and wish can get over this situation and rejoin his
family very soon.

In his contributions to the community I am aware of his donations in several occasions
to Angel Notion which is a well know local organization that helps children with very
few or no resources in receiving the medical assistance they require and would no be
able to get otherwise because of its cost.

I am conscious of what he has done; nevertheless, I personally believe that there will be
more damage done if he is kept apart from his family that needs him. I would definitely
do as much as I can in order to help him to incorporate into a normal life once again.


Sincerely,


Felipa Padilla Soto


Mexico 77710

EXHIBIT B

TRULINCS  23270086 - MENDOZA, DAVID RONALD - Unit: SET-E-B

---------------------------------------------------------------------------------------

FROM: 23270086
TO:
SUBJECT:
DATE: 10/5/2009 6:46:11 PM

Dear Honorable Judge Zilly,

My name is David Mendoza, and I will be coming before you on October 30, 2009 to be sentenced for Conspiring to Import Marijuana into the United States. The attempt of this letter is to express my sincerest apologies and remorse to your Honors Court, the Prosecution, the Citizens of the United States, my community, and most deeply to my family.

I want your Honor to know, that I accept complete responsibility for my actions, make no excuses for my behavior, and fully accept the sentence which your Honor will be imposing on October 30, 2009.

Your Honor, at the same time that this letter is a sincere apology for my behavior to this Court, it is also intended to express to my family, the feeling, sincerity and true humility for my behavior. I can never undo the past, but recognition of my behavior and its affects on my family, is key for them to begin to heal the tremendous damage which I have done.

Sir, I am married to a beautiful and wonderful wife, Elizabeth Ahnert. We have two children of our own, Inigo (age 2) and Nikolas (10 months). I also bring to our family a 4 year old boy, Skyler, who I am equally as proud of too.

I am the second son of Ivan and Maria Mendoza, and I was born on July 24, 1964. My paternal father, Ivan Mendoza, was deceased in 1966. Quite frankly, I have no memories of him. I do though, have very fond memories of my childhood with my step-father, Albert Emanuel, who married my mother in the summer of 1970. I am the proud son of Albert Emanuel, a Civil and Aeronautical Engineer, and decorated Air force Pilot. My father is the smartest, most patient and fairest man I know in this world. I love and admire my father.

I am also the son of Maria Emanuel, born in Spain, ambitious and hardworking woman. A woman who is not only strong, but has great compassion for the weak. My parents are defined by me and their peers, as the "perfect-parents". They are loving, caring, generous, understanding and supportive. I couldn't have asked for a better up-bringing.

I went to McGilvra Grade School, and was encouraged to play soccer on one of Seattle's first racially diversified soccer teams (Mr. Luster's McGilvra Soccer Dogs 1970). From there, I attended Madrona and Meany Middle School, then onto Garfield Highschool. I excelled in highschool, both academically and and socially. I graduated within the top 20 of my class, and was Class President at the time of my graduation. I began my college courses a year early, through the University of Washington's Early Start Program. I ultimately graduated from the University of Washington with a degree in International Business.

So as you can see your Honor, my parents have given me a tremendous advantage over most of those who come before you. I am truly sorry for doing this to them. From my actions, I have shamed, embarrassed, and to say the least, tremendously disappointed my parents and family. My actions have also financially disrupted what was supposed to be their "Golden-Years"; and for this I am deeply sorry too.

The impact of my selfish behavior really comes into focus with the reality that my parents, who are in there 80's, will most likely die while I am serving my 14 year sentence. Along with this reality, is that my little boys will be well into their teen years, by the time I am back into their lives. There is no greater impact of guilt or remorse, a son and father, can carry on his conscience. In order to begin this process of healing with my family and community, which I have completely devastated, it is important for me to assume responsibility for my behavior. I hope your Honor, my acceptance of this 14 year sentence, can be seen by this Court, and the citizens of the United States, as an honest attempt to repair the distrust and selfishness of my behavior. It is also extremely important for me to demonstrate to those in my family and community, the most sincere and apologetic overture possible, in order to regain any sort of value or level of trust. Simply put Sir, it's going to be a long time, if ever, before my family holds trust in me again.

Your Honor, I suspect the Prosecutor, Ms. Roe, will argue that my crime was solely motivated by both greed and deception, and to some degree, she is absolutely correct; but an even more over-riding characteristic that would be more conclusive, is that of over ambition. I make no excuses for the crime which has brought me before you, but without a doubt, ambition has been the critical characteristic of my personality. An overzealous need to succeed, which was, has been, clouded with the need to take risks. I did

TRULINCS  23270086 - MENDOZA, DAVID RONALD - Unit: SET-E-B
---------------------------------------------------------------------------------------------------------------

this absolutely selfishly, without consideration, nor attention to the effects and results that these decisions would have on my family and loved ones.

Again Sir, I deeply apologize for my behavior, and accept your sentence with all the humility and contrition one can have. Thank you for your time and consideration.

Respectfully,

David R. Mendoza