Judge Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) NO. CR06-466 TSZ |
| v. | ) GOVERNMENT'S SENTENCING MEMORANDUM |
| DAVID R. MENDOZA, | ) |
| Defendant. | ) |

The United States of America, by and through Jenny A. Durkan, United States Attorney for the Western District of Washington, and Susan M. Roe and Roger S. Rogoff, Assistant United States Attorneys for said District, files this Sentencing Memorandum. Sentencing is scheduled for Friday, October 30, 2009.

The government has no objection to the PreSentence Report, its calculations of recommendation, other than to note that the defendants' reported income, or rather his source of income, is highly unlikely. This is discussed below.

The defendant pleaded guilty to Conspiracy to Import more than 1,000 kilograms of Marijuana.

***TERMS OF THE PLEA AGREEMENT***

Arising from a lengthy settlement conference conducted by Judge Ricardo S. Martinez, the Plea Agreement was entered into under the provisions of Rule 11(c)(1)(C). That is, the parties, with Judge Martinez's active assistance, agreed on what appears to be an appropriate sentence. The recommendation is binding on the Court if the Court

*Government's Sentencing Memorandum*
MENDOZA/CR06-466TSZ - Page 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON  98101
(206) 553-7970

accepts the Plea Agreement.  If this Court determines that the sentence is not appropriate, either party is free to withdraw from the Plea Agreement.

The Plea agreement endorses a term of imprisonment 168 months (14 years) and the defendant's forfeiture of four specified real properties.  Those are (1) a residence at 2526 155th Place SE, Bellevue; (2) a residence at 31726 North Spotted Road, Deer Park; (3) a commercial property at 849 NW Wall in Bend, Oregon; and (4) a commercial property at 1135 Tacoma Avenue South, Tacoma.  The government is concerned that the title is **not yet cleared** on the Tacoma property and the Plea Agreement cannot be accepted until that is done.

Another term of the Plea Agreement is that the government will not charge Elizabeth Ahnert Mendoza, the defendant's wife, based on the evidence it had at that time.  Ms. Ahnert Mendoza was a subject in an ICE investigation in two districts so this term was of value to the defendant.

Lastly, the defendant waives his right to appeal the sentence so long as the Court imposes the term of 168 months in prison.

**FACTS OF HIS CRIMES**

Mr. Mendoza led a large and active drug smuggling group, as set out in the Plea Agreement.  The facts set forth in that agreement are worth reviewing to show the extent of his conduct.

*FROM THE PLEA AGREEMENT*

Over the five years leading up to and through August, 2006, Seattle resident David Ronald Mendoza was a large-scale transporter of Canadian marijuana both into the United States from Canada and throughout the United States.  Some of his marijuana smuggling and transporting activities include:

**2003:**

1. In April, 2003, ICE agents intercepted a 400 pound shipment of marijuana, nine hockey bags in "coffin style" compartments lined with plastic and topped with coffee

*Government's Sentencing Memorandum*
MENDOZA/CR06-466TSZ - Page 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

grounds, hidden within a commercial load of lumber coming through the international border at Blaine, Washington. Mendoza was the intended recipient of this load.

**2005**:

In spring and summer of 2005, Mendoza received several loads of marijuana flown across the border by helicopter into Washington State. Canadians Kip Whelpley and Jonathan Senecal came into Washington, living in Twisp and Seattle, in order to receive Mendoza's loads.

2. On June 9, 2005, ICE agents seized a 485 pound marijuana load, flown into Washington State for Mendoza and packaged in 11 hockey bags, from Whelpley.

3. On July 26, 2005, Jonathan Senecal received on behalf of Mendoza another marijuana load of unknown weight packaged in nine hockey bags.

4. On August 4, 2005, ICE agents seized a 500 pound marijuana load packaged in nine hockey bags which Mendoza, Danny Zylstra and Senecal had hidden in a woody ravine. Law enforcement contacted the men, confirmed their identities, and watched as the men tried to find the seized marijuana.

5. On December 15, 2005, three men, Danny Zylstra, John Sanders and William Renner, working for Mendoza picked up a 500 pound marijuana load at Sanders' Seattle residence. Together, the men moved the load to a storage unit in Everett. Later that evening Zylstra, driving Mendoza's truck, attempted to deliver 120 pounds of the marijuana in a South Seattle parking lot.

**2006:**

6. On February 7, 2006, ICE seized a 265 pound marijuana load, packaged in five hockey bags, from Robert Lease and Robert Beazley. This load was flown across the border by a helicopter piloted by Timothy Smith. This led to the arrest of Beazley, Lease, Chen, and Lin. After Smith dropped the marijuana to Beazley, Smith flew to another location in the United States where he picked up Mendoza. Smith then flew to an airport in British Columbia and proceeded to drive with Mendoza to the Pan Pacific Hotel in Vancouver, British Columbia.

*Government's Sentencing Memorandum*
MENDOZA/CR06-466TSZ - Page 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   7. On August 17, 2006, ICE seized a 415 pound marijuana load from Donald Cramer. That summer, he and Al Howard had received marijuana loads from helicopters landing in Idaho and Montana. The marijuana was transported east to Spokane and Seattle for distribution to others.

**Coconspirators Admissions**

Whelpley and Senecal admitted that they worked for Mendoza and that they picked up several other similar-sized marijuana loads for him during the summer of 2005 which they brought to the Seattle area for delivery to others.

Lease and Beazley admitted they worked for Mendoza and that they received prior marijuana loads for Mendoza, which they delivered to others.

Pilot Tim Smith admitted he worked for Mendoza and made at least one prior marijuana smuggling trip for him.

Cramer admitted that he received and transported between five and ten similar-sized marijuana loads for Mendoza.

Stacy Hinckley lived with Mendoza for three years, ending in mid-2006. Hinckley admitted she transported approximately 25 loads of marijuana to locations within the United States, including California, Oregon, Illinois, Utah and Colorado, for Mendoza. She estimated her loads weighed between 30 and 100 pounds.

Mendoza was responsible for importing and transporting thousands of pounds of marijuana within this District and elsewhere.

***OTHER FACTS***

The idea that the government intercepted, or learned of, every single one of Mr. Mendoza's loads is laughable. Undoubtedly, the facts set forth above delineate *some* of his crimes, but not all of them.

The defendant's financial representations to the Probation Office appear inflated. He claims to have received $3,000 a month from Pazzo's Restaurant (¶ 83) and $10,000 a month from ETA Construction (¶ 85).

*Government's Sentencing Memorandum*
MENDOZA/CR06-466TSZ - Page 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    The government conducted a significant review of these two businesses and
2 Mendoza's personal finances during this case and the civil forfeiture proceedings. This
3 summary is from the financial analyst who reviewed the books, records and accounts :
4    ***ETA CONSTRUCTION***
5    ETA Construction, LLC was opened in the State of Washington by Dave
6 Mendoza. Mendoza maintained checking account number 17281015 at Bank of America
7 in the name of ETA Construction, LLC.  For the time period reviewed, January 18, 2005
8 through March 9, 2007, deposits to this account totaled $360,040.65.
9    Of this amount $139,000, or 38%, consisted of funds from Maria and Albert
10 Emanuel, Mendoza's parents. Other sources include $61,100 from Melore Nielsen for a
11 "loan repayment," $53,055.48 from Tetra Tech, Inc, and $11,100 in cash.
12    Expenses from this account appear to be related to the personal expenditures of
13 Mendoza and **not** a separate construction business.
14    Although many of the outgoing withdrawals are to construction-related businesses,
15 such as Preston Woodworking and Sunburst Fabrication, most of these checks have
16 notations relating to properties owned by Mendoza.  For example, check number 1653
17 payable to Preston Woodworking in the amount of $9,584.96 has the memo "Bend
18 [Oregon] mat[erial] & lab[or]."  Check number 1603 payable to Sunburst Fabrications Inc
19 in the amount of $5,931 has the memo "Bend Steel Refab."
20    In addition, Mendoza wrote several checks from this account payable to cash.
21 Many of these checks also had memos associated with properties owned by Mendoza,
22 such as check number 1604 payable to cash in the amount of $7,000 with the memo
23 "Bend Payroll 3 mos."   In total, $89,646.94 was withdrawn in cash from this account
24 during the time period reviewed.
25    ***D & S CORPORATION (Pazzos)***
26    D&S Corporation dba Pazzo's Restaurant was opened in the State of Washington
27 by Dave Mendoza. Mendoza maintained checking account number 13916309 at Bank of
28 America in the name of D&S Corporation dba Pazzo's.  For the time period reviewed,

*Government's Sentencing Memorandum*
MENDOZA/CR06-466TSZ - Page 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

January 1, 2007 through May 31, 2007, deposits to this account totaled $281,747.12, of which $40,000 was transferred from the Bank of America personal account of Mendoza and Albert and Maria Emanuel.

The remaining funds consist of merchant credit card deposits. Of the total funds deposited $20,000 is transferred back to the Bank of America personal account of Mendoza and Albert and Maria Emanuel. The majority of the remaining funds appear to be business related expenses, such as payments to the Washington State Department of Revenue and ADP Tax/Financial Services for payroll expenses.

Several personal accounts of Mendoza and his parents were also reviewed. Deposits to all known accounts show **no** deposits or transfers indicative of payroll from the Pazzo's Bank of America 13916309 account. However, during 2006 through February 2007 a total of eight deposits totaling $9,392.28 from a different Pazzo's Bank of America account were identified. This Pazzo's account, number 12634614, was not analyzed during these years however only those eight deposits were located as having been deposited to any known accounts of Mendoza or his parents.

No other deposits were located that would indicate Mendoza receiving payroll from either ETA Construction, LLC or Pazzo's.

Mr. Mendoza needed cover businesses for his drug proceeds and it appears that these were used as such.

### RELATING TO EXTRADITION MATTERS

Mr. Mendoza's Sentencing Memorandum touched on his extradition (Page 4 lines 16 ff). The government has been in contact with the Extradition Unit of the Department of Justice as well as the State Department over the past two years in regards to this extradition, and has learned much about the Treaty.

The Treaty between the United States and Spain is clear as to what "conditions" may be imposed for extradition. For instance, the Treaty includes a rule which requires the charged crime to exist in the criminal codes of both countries. Mr. Mendoza was charged with a Structuring Count, which has no corresponding crime in Spain. As a

*Government's Sentencing Memorandum*
MENDOZA/CR06-466TSZ - Page 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 result, he could not be extradited, or stand trial, for the crime of Structuring. When he
2 arrived here, in accordance with the Treaty terms, the government was required to dismiss
3 the Structuring count.  Another rule is that a defendant may not be tried in a capital case,
4 nor tried and sentenced to an indeterminate term.  In accordance with the terms of the
5 Treaty, the State Department, together with DOJ, sent assurances that Mr. Mendoza
6 would be sentenced to a specific term of years, and that his was not a capital case.

In Spain, Mr. Mendoza asked that the Spanish government to condition his extradition on a guarantee that he serve his term in Spain.  Although a Spanish court agreed with him, neither the Spanish State Department nor the U.S. State Department affirmed that condition.  To the contrary, our State Department specifically disagreed and, instead, sent a diplomatic note assuring Spain that Mendoza would be free to apply for a Treaty Transfer as would any other prisoner.

It has become clear that this matter is one that the State Departments of the two countries must resolve, and that the United States Attorney's Office has no standing in dialogue.  The government brings this to the Court's attention only to urge the Court not to be caught up in this State Department issue, which will be resolved by the Foreign Ministries of the governments.

## SENTENCING RECOMMENDATION

To determine the appropriate sentence, the Court is directed to analyze the following: (1) the nature and circumstances of the offense; (2) the history and characteristics of Defendant; (3) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of Defendant; (6) the need to provide Defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the types of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted

*Government's Sentencing Memorandum*
MENDOZA/CR06-466TSZ - Page 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  sentence disparity among defendants involved in similar conduct who have similar
2  records.  Title 18, United States Code, Section 3553(a).
3      The offense is outlined thoroughly in the factual statement. The defendant evinces
4  no need for educational, vocational or medical help.  The only sentence available is prison
5  in light of the defendant's conduct and his two prior felony drug convictions.  There are
6  no specific victims, and thus no restitution.  There are few defendants before the Court
7  who supervised and directed this many subordinate drug traffickers for so long.
8      The other sentencing factors generally deal with the defendant himself.  Mr.
9  Mendoza in his Sentencing Memorandum and the attachment, especially his own letter of
10 October 5, presents an appealing picture.  He is a man of talent, intelligence and great
11 charm.  Unfortunately, he has spend the past 20 years of his life committing crimes,
12 smuggling drugs, and moving money through semi-phony businesses.  Most disturbing,
13 he has regularly used his aging parents to move money for him.
14      In an effort to understand why Mr. Mendoza stands before a Court for a third time
15 to be sentenced to years and years in prison, the government consulted the 1993 file,
16 *United States v. David Mendoza, CR03-148 BJR,* for some insight.  In 1993, he was
17 described as becoming a drug dealer while "fighting hard to keep his legitimate
18 businesses alive," *See*, Exhibit 1, Mendoza's Sentencing Recommendation, page 10, line
19 18, and as an "entrepreneur . . . driven by a vision and a goal..." , *Id. p. 11, lines 3-4,*
20 who, although previously involved in drugs, " has been completely devoted to legitimate
21 businesses for the past two years " by the date of sentencing. *Id. p. 4, lines 10-11*
22     The Recommendation and the attached letters spoke glowingly of his community
23 involvement, willingness to support charity, and even of his contribution for a church's
24 stained glass windows. *Id. p. 11-12.*   The parallels are disturbing - much of what is being
25 said about him now, was said then.
26     Most striking is his letter accepting responsibility, which he wrote to Judge
27 Rothstein.  In 1993 he said that he took "complete responsibility" for his crimes, and
28 spoke warmly of his parents and his upbringing, through which he was "blessed."

*Government's Sentencing Memorandum*
MENDOZA/CR06-466TSZ - Page 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON  98101
(206) 553-7970

Mendoza further reported that he graduated with a business degree from the University of Washington, and that his drug involvement was explained simply by "ambitio[n]." He concluded the letter by saying that he realized this had been a "terrible ordeal" for his family, that he hoped to "make it up to [his] family, friends and society," that he was "fully prepared to accept whatever punishment [he is] given," and mentioned that he simply requested that the Court imprison him nearby so that his father, whose "heart condition" made flying untenable, was able to visit him. Moreover, he foresaw a return to his legal business during his term of supervised release. *See,* Exhibit 2. According to Mr. Mendoza, his future looked promising once he dealt with the criminal case.

However, the *post*-incarceration posture of his 1993 case revealed a different picture. Once released from Sheridan to begin his term of Supervised Release, Mr. Mendoza simply refused. In a memorandum to the Court dated May 23, 1997, Probation Officer Michael Banks described how Mr. Mendoza "severed his contact" with Probation and "refused to submit to any of the conditions of supervised release as ordered by the Court." *See,* Exhibit 3, page 3. Mendoza did not want to be supervised or follow any rules. His supervised release was revoked, and the court sentenced him to nine months in custody. Supervision was terminated.

He returned to dealing drugs within a few years.

Currently, Mr. Mendoza writes that he accepts "complete responsibility for [his] actions, makes no excuses for [his] behavior, and fully accepts the sentence which your Honor will be imposing." He discusses his upbringing and family, again quite warmly, and notes that he has "shamed, embarrassed, and ...disappointed" them and that he hopes to demonstrate to his "family and community" the "most sincere and apologetic overture possible." See, Defendant's Exhibit B.

He denies that his crimes are fueled by greed or deception, rather it is that he is flawed by having "over ambition" with an "overzealous need to succeed, . . . clouded with the need to take risks." Nonetheless, he apologizes, again, for his actions and says he

*Government's Sentencing Memorandum*
MENDOZA/CR06-466TSZ - Page 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  accepts the sentence with "humility and contrition." In light of Mr. Mendoza's 20 years of
2  international drug dealing, the apology rings hollow.
3      This defendant entered a judicially brokered guilty plea with a jointly
4  recommended sentence of 14 years in prison and the forfeiture of four pieces of real
5  property.  There are no promises or conditions regarding where he will serve his sentence.
6  The government asks this Court to accept the Plea Agreement, impose 168 months (14
7  years), impose the maximum term of supervised release in an effort to keep him
8  crime-free if and when he returns to the United States.
9      DATED this 28th day of October, 2009.

                      Respectfully submitted,

                      JENNY A. DURKAN
                      United States Attorney

                      *s/ Susan M. Roe*
                      SUSAN M. ROE
                      Assistant United States Attorney
                      WSBA #13000
                      United States Attorney's Office
                      700 Stewart, Suite 5220
                      Seattle, Washington  98101-1271
                      Telephone: (206) 553-1077
                      Fax: (206) 553-4440
                      E-mail: Susan.Roe@usdoj.gov

                      *s/ Roger S. Rogoff*
                      ROGER S. ROGOFF
                      Assistant United States Attorney
                      WSBA #23362
                      United States Attorney's Office
                      700 Stewart Street, Suite 5220
                      Seattle, Washington 98101-1271
                      Telephone: (206) 553-4330
                      Fax: (206) 553-4440
                      E-mail: Roger.Rogoff@usdoj.gov

*Government's Sentencing Memorandum*
MENDOZA/CR06-466TSZ - Page 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON  98101
(206) 553-7970

CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2009 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorney(s) of record for the defendant(s). I hereby certify that I have served the attorney(s) of record for the defendant(s) that are non CM/ECF participants via telefax.

*s/Lindsay Erickson*
LINDSAY ERICKSON
Legal Assistant
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: (206) 553-4377
Fax:   (206) 553-4440
E-mail: Lindsay.Erickson@usdoj.gov

*Government's Sentencing Memorandum*
MENDOZA/CR06-466TSZ - Page 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970