CERTIFICATE OF SERVICE
I certify that I arranged for service of a copy of the foregoing document to which this certificate is attached, on the attorney of record of plaintiff/defendant + U.S. Probation the 13th day of July 1993.
KATRINA C. PFLAUMER
By [signature]

HAND DELIVERED
MSGR: Ellin bM   REC'D BY: PhW
COPY RECEIVED
JUL 13 1993
TIME: 2:45
UNITED STATES ATTORNEY
Seattle, WA

HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> DAVID RONALD MENDOZA, <br><br> Defendant. | NO. CR 93-0148R <br><br> DAVID MENDOZA'S <br> SENTENCING RECOMMENDATION |

## I. INTRODUCTION

David Mendoza is scheduled to be sentenced by this Court on July 16, 1993 at 9:30 a.m. Dan Zylstra and Chuck O'Connor are scheduled to be sentenced the same day.

David Mendoza's case presents a somewhat unusual situation: the parties disagree adamantly on some of the underlying facts; but agree on the appropriate sentence. The plea bargain range is 70 to 87 months and both defense and prosecution recommend 70 months incarceration.

## II. THE OFFENSE

The parties have worked with the Probation Department to attempt to obviate the need for a hearing on contested facts. The defense has reviewed the revised Presentence Report faxed at the close of business, Friday, July 9th and the witness statements recently provided by the government. The defense

DAVID MENDOZA'S SENTENCING RECOMMENDATION - 1

KATRINA C. PFLAUMER
2300 SMITH TOWER
SEATTLE, WASHINGTON 98104
(206) 622-5943

objects to allegations contained in the following paragraphs of the Presentence Report:

36. The defense moves to strike the reference to "One-and-a-half kilograms of cocaine" purchased by O'Connor from the confidential informant, "of which O'Connor delivered a portion to Mendoza in Seattle." Because the government's allegation is placed within a 15 month time frame, it is impossible to corroborate the specifics of this transaction. The defense maintains that Chuck O'Connor obtained only one kilogram of cocaine. This is supported by the grand jury testimony of Dan Zylstra, who accompanied Mr. O'Connor, and that of Bill Aldridge, from whom Mr. O'Connor purchased the cocaine. Mr. O'Connor's interview and grand jury are somewhat contradictory, but he cannot recall who got what cocaine. The defense also contests the conclusion that "O'Connor delivered a portion to Mendoza in Seattle." David Mendoza was in Spain at the time. O'Connor exported approximately 200 grams on his person and delivered it to Spain, where he met with David Mendoza.

37. This paragraph refers to the fourth buying trip, where O'Connor purchased a kilogram from Bill Aldridge in North Carolina. Since all parties agree that this was counterfeit powder and not cocaine, the Presentence Report's conclusion should be corrected.

DAVID MENDOZA'S SENTENCING RECOMMENDATION - 2

KATRINA C. PFLAUMER
2300 SMITH TOWER
SEATTLE, WASHINGTON 98104
(206) 622-5943

38. We contest the phrase: "O'Connor was to assist Mendoza in all aspects of their partnership." This is misleading language which suggests Mendoza's supervision; and should be stricken.

47. While it is true Mendoza delivered several pounds of marijuana as a favor in August of 1992, he was uninvolved in raising, harvesting, or selling the marijuana. He did not obtain any money for this favor which was unrelated to the charged conspiracy.

70. The primary objection of defense to the Presentence Report is the Probation Department's acceptance of the government's theory that Mendoza should receive an upward adjustment as "an organizer in a criminal activity." As discussed in the remainder of this memorandum, this is not supported by the facts.

The defense moves that the Presentence Report be modified to make the corrections listed above. The Presentence Report has an important effect on an individual's status and treatment while in prison. It is particularly critical that the "organizer" enhancement be deleted.

The government's version of events is derived from a number of witnesses. The only individual describing David Mendoza as "more culpable" is Chuck O'Connor. Dan Zylstra describes O'Connor and David Mendoza as equal partners in all matters.

Chuck O'Connor was interviewed long before David Mendoza. He attempted to downplay his own responsibility by picturing

DAVID MENDOZA'S SENTENCING RECOMMENDATION - 3

David Mendoza as the main mover behind their partnership. At the same time as he was being debriefed by government agents about the partnership, Mr. O'Connor was sending messages to David Mendoza urging him not to return to the United States. Apparently Mr. O'Connor was concerned that the government rely solely on his description of events.

The fact is that Chuck O'Connor and David Mendoza have known each other since grammar school. Although they were out of touch for some time, they got reacquainted in the Spring of 1988. For approximately two years, beginning in 1989, they engaged in a three-way partnership with an individual in Spain, participating in both legal and illegal activities. The three exported clothes, and started a restaurant.

By the time the government was interviewing Mr. O'Connor, the friendship and partnership had come unglued. Mr. O'Connor and David Mendoza had for some time been arguing about money, use of the house they owned together, and exactly when and how importation of hashish should be abandoned. They had already long since abandoned their attempts to obtain and market cocaine.

The government suggests that David Mendoza sought cocaine from Chuck O'Connor. David Mendoza readily admits that he purchased user quantities from Chuck O'Connor, including an ounce on one occasion, which five purchasers split. He adamantly denies ever having taken cocaine to Spain. Mr. O'Connor's assertions are undercut by his own admission that it was he himself who was and had been a trafficker in both cocaine and

DAVID MENDOZA'S SENTENCING RECOMMENDATION - 4

marijuana for over four years before he ever discussed the subject with David Mendoza. Indeed, if Mr. Mendoza had been either exporting or selling cocaine, he would have had no need to seek Mr. O'Connor's partnership.

Rather, the facts strongly suggest that Mr. O'Connor was established as a cocaine dealer in the United States; David Mendoza had friends involved with a bar in Spain, where cocaine was selling at a high rate of profit; the two determined to work out a partnership with a Spaniard to export a quantity. They were largely unsuccessful, both in acquiring a kilo of cocaine and in exporting it.

The lack of success began on the first attempted cocaine buy. The circumstances certainly undercut any theory that Mendoza was the organizer. The money was supplied by O'Connor's friend and source, Jason Feezer. It was carried to Florida by O'Connor, and transferred to Zylstra, who gave it to the supposed supplier. The supplier absconded. David Mendoza returned to Seattle the next day. Zylstra and O'Connor remained in Florida attempting to find another source. This trip, the first joint effort at commercial cocaine purchase, occurred May 13, 1989.

Six months later, David Mendoza located a different source for cocaine in Las Vegas. The funds were supplied by the Spanish partner, O'Connor and himself equally. David Mendoza was arrested transporting a kilogram through airport security, and sentenced to a three year suspended sentence.

Approximately six months later, in March or April of 1990,

DAVID MENDOZA'S SENTENCING RECOMMENDATION - 5

KATRINA C. PFLAUMER
2300 SMITH TOWER
SEATTLE, WASHINGTON 98104
(206) 622-5943

1  Chuck O'Connor and Dan Zylstra made another trip to attempt to
2  buy cocaine.  They had failed twice and lost the money in these
3  two earlier tries, and also owed legal fees and fines for David
4  Mendoza.  The group was significantly in debt.  Furthermore,
5  O'Connor had lied to Jason Feezer who was expecting another
6  kilogram to make up for the Florida "rip-off."  (Feezer was
7  connected only to O'Connor.)

8      O'Connor, Zylstra, and Feezer traveled to Florida and
9  contacted Bill Aldridge.  This is the trip referred to in
10 paragraph 36 of the Presentence Report, mentioned above.  Zylstra
11 and Aldridge agree that a single kilogram was sold to O'Connor.
12 That kilogram was brought back to Seattle.  O'Connor told David
13 Mendoza that he diluted that kilogram so that he could extract
14 200 grams of cocaine.  He also told David Mendoza that he gave a
15 kilogram to Jason Feezer.  David Mendoza was in Spain at the time
16 and therefore cannot verify what Chuck O'Connor in fact did.  In
17 O'Connor's testimony he seems to have trouble remembering what in
18 fact he did with whatever quantity he bought.

19     O'Connor took the 200 grams cocaine skimmed from that kilo
20 to Spain.  He was observed in the airport bathroom using cocaine,
21 which aroused official suspicion.  He hid the cocaine in airport
22 furniture.  David Mendoza came up from Bilbao to Madrid and
23 picked it up from the hiding place.  These 200 grams were
24 distributed by the Spanish partner.  This was the only successful
25 purchase of the four attempts to obtain cocaine.  It was also the
26 only exportation to Spain.

27 DAVID MENDOZA'S SENTENCING RECOMMENDATION - 6

On August 11, 1990, David Mendoza is charged with again attempting to possess cocaine (Count VI.) This time O'Connor traveled alone to North Carolina, where he attempted to purchase cocaine from William Aldridge. According to grand jury testimony, O'Connor offended Aldridge by sleeping with his girlfriend and the result was delivery of a fake kilo. Although O'Connor claims David Mendoza met him at the airport on his return, and stored the fake kilo, David Mendoza's passport indicates that he was in Spain from August 10, 1990, on. (See Exhibit A.) This was the last attempt to purchase or export or traffick in cocaine.

Facts regarding the importation of hashish from Spain are less contested. The parties agree that after his Nevada conviction in 1989, David Mendoza, Chuck O'Connor, the Spanish partner, and Zylstra, began importing hashish and distributing it in the United States. O'Connor transported it several times personally and was in charge of distributing it. The contacts in Spain for supplying it were David Mendoza's, and he was the only co-conspirator who spoke fluent Spanish.

In the Fall of 1991, David Mendoza and Chuck O'Connor had discussed abandoning the importation of hashish. By this time, it had been a year since they had attempted to obtain or sell cocaine.

When hashish packages failed to arrive in the mail for four months, they both realized something was amiss. Against David Mendoza's advice and without his knowledge, Chuck O'Connor

DAVID MENDOZA'S SENTENCING RECOMMENDATION - 7

decided to pick up two packages of hashish at the Post Office. It was a controlled delivery and O'Connor was stopped.

Also in October of 1991, the DEA searched a house in Ballard owned by David Mendoza, O'Connor, and the Spanish partner. They found equipment and house modifications for a marijuana grow, some of which remained from the prior tenant. There is disagreement among the parties as to when the plan to establish a grow in the Ballard house was abandoned.

In sum, though the parties disagree on many details, the broad outline of this case establishes: 1. Chuck O'Connor was selling both marijuana and cocaine for over four years before he entered any kind of agreement with Mendoza, the Spanish partner, or Zylstra. 2. Chuck O'Connor provided all the funds for the first attempt to purchase a kilo of cocaine and made three of the four trips in which the parties attempted to purchase a kilo. 3. O'Connor exported cocaine on his person to Spain. 4. O'Connor imported hashish on his person from Spain; established the Post Office boxes; and handled all distribution of hashish imported from Spain. 5. Zylstra was instrumental in assisting O'Connor, the Spanish partner, and Mendoza. Zylstra's main activity was in growing and distributing marijuana. 6. The cocaine conspiracy lasted approximately two years, and successfully obtained only one kilogram of cocaine. It was voluntarily abandoned. 7. The hashish conspiracy lasted approximately a year and a half and was over in October, 1991. 8. The plan to grow marijuana was also abandoned in October of 1991, at the latest.

DAVID MENDOZA'S SENTENCING RECOMMENDATION - 8

Since the end of this conspiracy in October, 1991, David Mendoza's only illegal activity was to deliver a few pounds of marijuana as a favor, at Dan Zylstra's request. Otherwise, he has lived and worked legally. When he learned that he would be charged in this matter, he voluntarily returned from Spain. See affidavit of Gary Donion, Exhibit B.

### III. THE INDIVIDUAL

Reading the many letters submitted by friends, relatives, and associates of David Mendoza, it is hard to imagine how so bright, socially committed, and energetic an individual got involved in drugs. In many ways, David Mendoza seems to have been a casualty of the ethics of the '80's, in which he came of age. Ambition and talent were measured only in financial success. David Mendoza worked hard at his legitimate businesses throughout this time period, as the many letters attest. He was seen remodeling the restaurant, working at the bar in Spain, and putting many hours into buying and exporting name-brand American sports clothes. He continued these efforts during the two and a half years in which he was involved in drugs. Indeed, the drug trade plied by Chuck O'Connor appeared a short cut to financial success for David Mendoza, a way of giving a financial boost to his legitimate business. Unfortunately, it did the opposite. O'Connor lost the money fronted by Jason Feezer and went immediately into debt. O'Connor, Mendoza, and the Spanish connection then invested in the Las Vegas trip, where David

DAVID MENDOZA'S SENTENCING RECOMMENDATION - 9

Mendoza not only lost the money from the kilo, but paid attorneys $20,000 and another $5,000 in fines. Six months later, O'Connor tried to pay back Feezer and finally get some cocaine to export on his second trip to Florida in the Spring of 1990. Jason Feezer accompanied O'Connor on that trip, as he was adamant he should get the kilo owed to him. Although O'Connor remembers this, he seems uncertain how much cocaine he actually gave Feezer. David Mendoza maintains that an extra 200 grams was the total extracted for export to Spain. O'Connor recalls stashing the cocaine in two cigarette packages, one of which was hidden in airport furniture in Spain, where David Mendoza picked it up. The conspiracy to buy and sell or export cocaine effectively dissolved in August of 1990 when O'Connor bought a fake kilo in North Carolina. Thereafter, O'Connor, Mendoza, and the Spanish partner limited themselves to the importation of hashish, which was somewhat more successful.

During this period of time, David Mendoza was fighting hard to keep his legitimate businesses alive. As Phillip Maxler of Advance Marketing Services puts in his letter:

> During my dealings and experiences with David and his partner, regarding whole sales of various types of clothing and athletic footwear, I would have to say that I have not dealt with a finer individual or organization during my eight years experience in this industry.
>
> David has consistently demonstrated to me that he is a very hard working individual and a team player that's honest and reliable for what he says he will or will not do.[1]

---

[1] The first letters attached to this presentence memorandum are letters received since our submission to the Probation Department, and not attached to the Presentence Report.

DAVID MENDOZA'S SENTENCING RECOMMENDATION - 10

KATRINA C. PFLAUMER
2300 SMITH TOWER
SEATTLE, WASHINGTON 98104
(206) 622-5943

David Mendoza's best friend, Robert Mathews, speaks in similarly glowing terms of David's capacity for friendship. He describes David as an "entrepreneur," . . . "driven by a vision and a goal of what he wants to accomplish." He also describes David as the kind of friend who will "believe in you, push you to your limit, and pick you up when you make a mistake."
Mr. Mathews describes in some detail David's efforts to create a restaurant over the past three years. While David was still involved with hashish importation for the first year, he has been completely devoted to legitimate businesses for the past two years. Mathews speaks compellingly of his own sadness that David's bad decision and economic drive will undercut his many wonderful accomplishments. David Mendoza's restaurant partner, John Gunnar, also speaks of David's energy and commitment and capacity for friendship. He can describe specifically David Mendoza's involvement with charity and community service functions, including hosting the annual auctions for the Eastlake Community Council in 1991 and 1992, several fundraisers for Northwest Harvest, food donations and support the annual Taste of the Nation for the Homeless, and provision of food for a half-way house during the holidays. John Shepherd writes from the Downtown Emergency Service Center of David Mendoza's contribution of time on Saturday evenings and easy rapport with those the Center helps. Reverend James Oxley also speaks of David Mendoza's involvement in the church, including his contribution of stained glass windows.

DAVID MENDOZA'S SENTENCING RECOMMENDATION - 11

KATRINA C. PFLAUMER
2300 SMITH TOWER
SEATTLE, WASHINGTON 98104
(206) 622-5943

David Mendoza has continued this community work, even while in jail. At a time when most are obsessed by their own cases and concerns about their own futures, David Mendoza has taken time to work with other detainees in the Kent Jail. Two students with whom he has been working since arriving at Kent Jail are scheduled to receive their G.E.D.'s next month, thanks to David's tutoring in Spanish and English.

We have tried to limit the number of letters attached to this submission. Each of the letters submitted represents a distinct viewpoint and an important perspective on David Mendoza's character. We ask the Court to consider each of these perspectives and sentence David Mendoza to the 70 months recommended by both the prosecution and the defense.

Respectfully submitted this 13th day of July, 1993.

KATRINA C. PFLAUMER,
Attorney for David Mendoza

DAVID MENDOZA'S SENTENCING RECOMMENDATION - 12

KATRINA C. PFLAUMER
2300 SMITH TOWER
SEATTLE, WASHINGTON 98104
(206) 622-5943