```
                    UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF WASHINGTON AT SEATTLE
_____

 UNITED STATES OF AMERICA,        )
                                  )
              Plaintiff,          ) CASE NO. CR06-466 TSZ
                                  )
 v.                               ) SEATTLE, WASHINGTON
                                  ) June 8, 2009
 DAVID MENDOZA,                   )
                                  ) Status conference
              Defendant.          )
                                  )
_____

                  VERBATIM REPORT OF PROCEEDINGS
              BEFORE THE HONORABLE THOMAS S. ZILLY
                  UNITED STATES DISTRICT JUDGE
_____


 APPEARANCES:

  For the Plaintiff:     ROGER ROGOFF



  For the Defendant:     COLETTE TVEDT




  Reported by:           NANCY L. BAUER, CCR, RPR
                         Federal Court Reporter
                         700 Stewart Street, Suite 17205
                         Seattle, WA 98101
                         (206) 370-8506
                         nancy_bauer@wawd.uscourts.gov
```

2

| | |
|---|---|
| 1 | June 8, 2009                                                    11:00 a.m. |
| 2 | PROCEEDINGS |

3       THE CLERK: CR06-466Z, United States of America v.
4  David Mendoza. Counsel, please make your appearances for the
5  record.
6       MR. ROGOFF: Good morning, Your Honor. Roger Rogoff
7  for the United States.
8       MS. TVEDT: Good morning, Your Honor. Colette Tvedt
9  on behalf of Mr. Mendoza.
10      THE COURT: All right. You've appeared, along with
11 Ms. Lee and Mr. Robinson.
12      MS. TVEDT: That's correct, Your Honor.
13      THE COURT: All right. This is a status conference.
14 The court has pending before it joint motions to continue the
15 trial date, and the court concluded from reading the papers
16 that there was just precious little information provided to
17 me that would justify a continuance of the trial date, and
18 thus, I want to know more about the charges, the length of
19 trial, and other issues that might inform me better on
20 whether or not a continuance should be granted, and if so,
21 for what period of time.
22    So let me ask government counsel first. Just walk me
23 through the superseding indictment, and tell me, generally,
24 what's the nature of the case. I can read what the
25 indictment says. It's not clear to me the difference between

 1  Count 1 and Count 2.  You allege two different conspiracies,
 2  it looks like it's just two different theories involving the
 3  same substantive counts which follow, but you may clarify
 4  that.
 5     What's involved?  How long would it take the government to
 6  put on their case?  Why can't you be prepared to proceed when
 7  it's set for trial at the end of this month?  Go ahead.
 8          MR. ROGOFF:  Certainly, Your Honor.  There are seven
 9  counts here.  The first is conspiracy to import more than a
10  thousand kilograms of marijuana; the second is conspiracy to
11  possess marijuana on an aircraft, more than a thousand
12  kilograms.  So it's a slightly different charge.  Yes, they
13  do relate --
14          THE COURT:  The substantive counts, I gather, are
15  Count 3, on August 4, 2005; Count 4, February 7, 2006; and
16  then Count 5 is a period of time.
17          MR. ROGOFF:  Correct.
18          THE COURT:  But all of those would be relating to
19  each of the two conspiracies you allege?
20          MR. ROGOFF:  That's correct, Your Honor.
21          THE COURT:  So the proof would be all the same,
22  basically?
23          MR. ROGOFF:  Yes.
24          THE COURT:  Are you charging it more than once?  Why
25  do you need two conspiracies to proceed to trial?

```
 1           MR. ROGOFF:  Well, I think, Your Honor, that the
 2   purpose of indicting the defendant in the way that it
 3   occurred was to give some weight to the idea that the
 4   defendant was using an aircraft to do this, which is
 5   different than most of the conspiracies that we see in this
 6   district, or at least some of them.  We wanted that to be
 7   reflected in the charges that were before the jury, and we
 8   wanted the jury to understand the significance of that
 9   particular act.  That's why it was charged as two separate
10   conspiracies.
11           THE COURT:  Your evidence of Count 1 and Count 2
12   would be the same, would it not?
13           MR. ROGOFF:  The evidence would be similar.
14   They're --
15           THE COURT:  How would it be different?
16           MR. ROGOFF:  Well, Your Honor, the conspiracy to
17   import can occur in ways other than just on an aircraft.
18           THE COURT:  I understand that.  But your evidence in
19   this case relates to an aircraft; is that right?
20           MR. ROGOFF:  That's correct, Your Honor.  It's
21   several aircraft over a period of time.
22           THE COURT:  How many witnesses and how long would it
23   take to put on your case with respect to the counts, before
24   we get to the money laundering and the other count?
25           MR. ROGOFF:  Your Honor, I have approximately 25
```

witnesses.  I would assume that this case would take a week, maybe a day past that.

THE COURT:  And is that for the marijuana charges, as opposed to the money laundering charge?

MR. ROGOFF:  That would be everything, Your Honor.

THE COURT:  Everything?

MR. ROGOFF:  And with --

THE COURT:  And from your vantage point, are you ready to go to trial?

MR. ROGOFF:  No, we're not ready to go to trial yet, Your Honor.  The main reason we're not ready to go to trial has to do with Tim Smith, who is one of the witnesses in this case, who we were sort of in control of back in 2006 when the defendant left the country and ended up in Spain, but who has, since that time, moved.  We have located him, and we are seeking to depose him, which is one of the motions that is before the court.

THE COURT:  Well, it was before the court because it got filed on the 5th of June.  It wasn't mentioned in the motion to continue the trial date.  Why couldn't that deposition be taken in the next two or three weeks?

MR. ROGOFF:  Well, one of the difficult things is that he is in Canada, and in order to arrange that, we need his assent, because there was no way to subpoena him in Canada.  That took some time.  We also needed the assent of

1  defense counsel, which now we have.  That took some time.  We
2  know that --
3          THE COURT:  So the defense has agreed to this
4  procedure?  No response been filed or due yet, but I wanted
5  to try and deal with the motion, so to the extent it can be
6  ordered, we can proceed with it.
7          MS. TVEDT:  Your Honor, I'm not prepared to address
8  the motion that was filed on the 5th.  I just saw it today,
9  and I don't know if we're agreeing to that motion.  I can
10 look at it and file a response within the next few days.  I
11 would speak with Mr. Robinson.
12         THE COURT:  What would your objections be?
13         MS. TVEDT:  There potentially is a proffered issue on
14 whether or not they want the videotaped deposition of
15 Mr. Smith in Vancouver, I think, is where he is.  I have not
16 looked over the pleadings yet, so I don't feel like I'm in a
17 position to respond to it.  We may not object, but I'd ask
18 for time to review the pleadings.
19         THE COURT:  What I heard from government counsel is
20 not correct?  There is no agreement?  Is that where it is?
21         MR. ROGOFF:  There's an agreement with Mr. Smith's
22 counsel, Your Honor.  Sorry if I misspoke.
23         THE COURT:  Oh, I'm sorry.  Perhaps you said that and
24 I didn't understand the distinction.
25      Tell me what the nature of the claims are with respect

```
 1  to -- I mean, Count 3 is one aircraft arriving in the Western
 2  District on August 4, 2005?
 3          MR. ROGOFF:  That's correct, Your Honor.
 4          THE COURT:  And Count 4 is one aircraft load on
 5  February 7th, 2006?
 6          MR. ROGOFF:  That's correct, Your Honor.
 7          THE COURT:  And how many airplane loads are alleged
 8  in Count 5?
 9          MR. ROGOFF:  Your Honor, there's no specific amount.
10  This relates to testimony from different cooperating
11  witnesses who talk about different loads.  I would not be
12  able to give you an accurate number standing here right now,
13  but --
14          THE COURT:  I mean --
15          MR. ROGOFF:  -- more than one.
16          THE COURT:  You can't tell me right now how many
17  different airplane loads of drugs were brought in during
18  June 1 through August 17th, 2006, described as the Cramer
19  loads?  You tell me you don't know?
20          MR. ROGOFF:  Your Honor, I don't have that
21  information before me.
22          THE COURT:  Well, I would think, with a trial date in
23  three weeks, you would have been talking to some witnesses
24  and have some idea what's going on here.
25          MR. ROGOFF:  Well, as you probably know, I don't like
```

```
 1   to do this, but I just came onto this case not three or four
 2   days ago.  So I just filed a notice of appearance.  So I'm
 3   still catching up.  Ms. Roe is out of town today, which is
 4   why I'm covering the hearing today.  I apologize to the
 5   court, but I'm limited somewhat to the factual basis of what
 6   I can give you.
 7            THE COURT:  Are you substituting, or are you joining
 8   the team?
 9            MR. ROGOFF:  I'm joining the team.
10            THE COURT:  So 20 or 25 witnesses, about a week or
11   more to try the case?
12            MR. ROGOFF:  Yes, Your Honor.
13            THE COURT:  And the government is not ready to go to
14   trial on the date set?
15            MR. ROGOFF:  That's correct, Your Honor.  We're
16   asking for, essentially, another four weeks, from the end of
17   June to the beginning of August.  We're not asking for a
18   significant period of time.  We're asking for a short period
19   of time to get these witnesses on track.
20            THE COURT:  What would be your position if the court
21   doesn't have a trial date he can give you in August but we
22   could do it in early September?
23            MR. ROGOFF:  The government can look at it, Your
24   Honor.
25            THE COURT:  All right.  Let's hear from the defense.
```

1         MS. TVEDT:  Good morning, Your Honor.
2         THE COURT:  Good morning.
3         MS. TVEDT:  We're also asking for --
4         THE COURT:  Use the podium and, more importantly, the
5  microphone system.
6         MS. TVEDT:  Your Honor, Mr. Mendoza was arraigned
7  before the court on May 4th, and the trial date of June 29th
8  was originally set, which was approximately a 57-day period
9  to prepare for this case.
10    As the court is aware from the charges, he's facing a
11 mandatory minimum of 20 years on the conspiracy of over a
12 thousand kilograms of marijuana.  We have received
13 significant discovery from Ms. Roe.  She cave gave us
14 approximately 245 pages on May 19th and another 200 pages, or
15 approximately, on May 29th.  According to Ms. Roe, there's
16 still outstanding discovery that is due to us.  There are,
17 from what Mr. Rogoff has said, at least 25 witnesses, and it
18 is our understanding, from speaking with Ms. Roe, that one of
19 their witnesses, Timothy Smith, is in Canada, and that they
20 wanted to schedule a deposition.
21    One of the other things that Ms. Roe shared with us is
22 that she would have to get permission from the Department of
23 Justice, and it's 21-day lag period to do that deposition.
24         THE COURT:  I don't quite understand.  That
25 permission from the Department of Justice has not been

1   obtained?

2        MS. TVEDT:  That was my understanding, Your Honor,
3   from speaking with Ms. Roe.

4        THE COURT:  Even if there were an agreement?

5        MS. TVEDT:  That's my understanding, that even if
6   there's an agreement, that she would still have to apply for
7   and receive permission from the Department of Justice to go
8   to Canada to depose a witness.

9        THE COURT:  Counsel, can you add anything to that
10  issue?  I mean, this would be an advisory opinion, then, on
11  my part to rule on the government's motion for a Rule 15
12  deposition if the Justice Department hasn't approved it?

13       MR. ROGOFF:  Your Honor, that's the information that
14  I have.  It would take that period of time in order to get
15  the deposition done.

16       THE COURT:  No, that's a different subject.  The
17  question is:  Do you have all the authority you need from the
18  Department of Justice to proceed in that manner with the Rule
19  15 deposition?  Do you know whether you need their consent?

20       MR. ROGOFF:  I don't know, Your Honor.

21       THE COURT:  All right.  Go ahead, Counsel.

22       MS. TVEDT:  Your Honor, so when we --

23       THE COURT:  Your understanding from Ms. Roe is they
24  somehow need the Department of Justice to sign off?

25       MS. TVEDT:  That was my understanding, Your Honor,

and I could be wrong.  But that's what I interpreted Ms. Roe to be saying when we met with her on Friday; that she would need to apply for that permission to leave the country to do the deposition.  So that's all I can tell the court.

Your Honor, we have been working diligently to try to resolve the case.  One of the things the court may be aware of is that we're asking for a settlement judge.  We met on Friday, and we're hoping to be sent out to a settlement judge either tomorrow or Wednesday.  We're close to trying to resolve this case.

THE COURT:  If we're close, why not keep the trial date and get the settlement judge?

MS. TVEDT:  We're just trying to be -- in all honesty, with the type of charges and the length of time Mr. Mendoza is facing, we're only asking for an additional few weeks.  I counted this morning, from May 4th, the date of the arraignment, to August 10th, it comes out to 13 weeks to prepare for trial.

Mr. Robinson and myself are trying diligently to get all the information to prepare the case for trial.  I think that, given the nature of the charges, that that's a fair request to get a case continued.  Hopefully we can resolve the case, Your Honor, but that's where we are.  And I think in the motion for continuance we put into the court some of the things that have been going on with Mr. Robinson.  Right

```
 1   after the arraignment, he was out of the office for a week
 2   with a flu.  He just finished his civil trial on Friday.  And
 3   now he is schedule to fly out to Guantanamo Bay for a
 4   week-long -- he's involved with one of the terrorist cases in
 5   Guantanamo Bay.  So with that, we're asking the court to give
 6   us the continuance to August 10th.
 7               THE COURT:  What would your view be with respect to a
 8   continuance to early September?
 9               MS. TVEDT:  We have no objection.  We have the
10   paperwork that Mr. Mendoza can file the waiver of speedy
11   trial.  We have that here for the court's consideration.
12               THE COURT:  You did file a waiver already through
13   August?
14               MS. TVEDT:  That's correct, but if court would be
15   inclined to put it to September, we can do that.
16               THE COURT:  What I'm inclined to do, if a continuance
17   is granted, the parties to seem to suggest August 10th, but
18   that's not a date available on my calendar.  I'm thinking in
19   terms of September 8th.
20               MS. TVEDT:  That should be fine.
21               THE COURT:  The Tuesday after Labor Day.  The
22   defendant is in custody, and I know he wants his trial sooner
23   rather than later.  Have you had an opportunity to discuss
24   with him pushing the trial to that day?
25               MS. TVEDT:  I did.
```

1       THE COURT:  Any objection?
2       MS. TVEDT:  No objection, Your Honor.
3       THE COURT:  Mr. Mendoza, let me directly ask you.
4  You don't have to respond to any of my questions, if you
5  don't want to.  You may talk to your lawyer before you
6  answer, if you'd like.
7     Your counsel has joined in the filing of a motion for a
8  continuance, and you've apparently signed a waiver through
9  August 10th.  Do you have any objection, sir, to continuing
10 the trial until September 8th?
11      THE DEFENDANT:  Good morning, sir.  No, I do not.
12      THE COURT:  I know this has been a concern, because
13 it's an old case.  You were, obviously, on holiday in Spain,
14 until you were apprehended, and we had some issues getting
15 you back here.  We've had some forfeiture issues that arose
16 in your absence.  But in any event, you don't object in any
17 way to a continuance of the trial through September 8th,
18 which would be a Tuesday?
19      THE DEFENDANT:  I'm fine with that, sir.
20      THE COURT:  Am I understanding from defense that you
21 think a week to two weeks is what we need to try this case?
22      MS. TVEDT:  Your Honor, I would agree with that
23 assessment.  It's about a two-week trial, at the most.
24      THE COURT:  All right.  First, there is a motion
25 before the court to continue the trial.  It was an unclosed

motion, but the motion papers did not provide me with sufficient information to justify a finding that the ends of justice are served by a continuance and outweigh the interest of the public and the defendant in a speedy trial.  And I now believe that, understanding the breadth of the case, approximately 25 witnesses, the complexity of the case involving various alleged deliveries of drugs into the country by aircraft over a period of time that spanned, according to Count 1, five years prior to August 17th, 2006.  But more specifically, from June 1 of 2005, through, apparently, August 17th of 2006, a number of airplane deliveries are alleged to have occurred involving marijuana.  The Count 6 deals with another conspiracy to engage in money laundering, and Count 7, a structuring of currency transaction.

I'm satisfied that, apparently, the government has filed an enhanced penalty information, which requires, or would, perhaps, require a minimum statutory minimum of 20 years if convicted on all counts.

Defense counsel have indicated -- well, all counsel have indicated their objections.  We do have the -- I want to speak more about this Rule 15 issue, but in any event, I'm satisfied that the interest of justice requires a continuance of trial be granted.  I'll grant the motion and continue the trial to September 8th, 2009, and exclude all time from this

date until that date under the Speedy Trial Act, and I find the requirements of the Speedy Trial Act are satisfied under 18 U.S.C. Section 3161(h)(8). The court will enter a brief order consistent with my ruling.

I want to get back to this Rule 15 deposition. I understand that it was just filed, response is not due. But I took a few moments to read the case, the basic case cited by the government's counsel, *United States v. Medjuck*, 156 F.3d 916, Ninth Circuit, 1998. It appears in this case, from what the government represents, at least, that this Mr. Smith is currently in Canada. He's been located. He's agreed to do a deposition but is not subject to subpoena power by the government but in all likelihood would be unavailable for purposes of Rule 15 and seems to justify such a deposition.

I'm troubled by the government's filing of the motion if they have not received the Justice Department's consent in advance, and I think that would be a prerequisite. So I'd be very surprised if that's still necessary.

But in any event, I guess the government should file a some sort of pleading in the next three days that tells us whether or not they got consent, because if they don't, I'm going to strike the motion. It's certainly premature if they haven't got whatever necessary consents they have or need to bring the motion.

1    Now, the motion outlines a couple of alternatives, both of
2    which would suggest or require that the defendant himself
3    personally be present here in Seattle at the courthouse and
4    attend a deposition by video conferencing with one of his
5    lawyers, while another lawyer appears either in Vancouver or
6    somewhere in Canada, or at the border under circumstances to
7    be worked out.
8    I don't see a particular difference in either of those.  I
9    don't know that it's possible to, but the parties should
10   explore the possibility of even getting the defendant up to
11   the border.  But I think, logistically, the fact he's in
12   custody, that's probably not very realistic, and the video
13   conferencing probably is almost as workable.  And although
14   not committing, I'm going to suggest to you that if you can
15   work out the details, and I'm assuming the defendant is
16   present here in this courthouse with his counsel, and I would
17   assume the government -- another government counsel as well,
18   that it may be appropriate for me to attend that deposition
19   and rule on my objections as they are made so that we don't
20   find ourselves in a situation where some objection was made,
21   a legitimate objection that might have been cured at the
22   time.  So that's a possibility that I would attend that
23   deposition and rule during the course of the deposition so we
24   have a complete transcript, with everybody understanding
25   what's been admitted and what hasn't been admitted or will be

1  admitted into evidence.
2      The response for that is the 12th, this Friday.  Are you
3  going to be able to get your response in by then?
4          MS. TVEDT:  Yes, Your Honor.
5          THE COURT:  Again, counsel, if you haven't gotten
6  your attorney general's approval to file this motion or
7  consent to do this deposition, I think you should notify the
8  court and counsel, and if you don't have the consent, they
9  don't need to respond to the motion.
10     All right, I know you want a settlement judge.  I heard
11 you wanted it in the next couple of days.  I suppose the rush
12 is somewhat off with the continuance of the trial date, and
13 it would have been unlikely I could have found a settlement
14 judge so quickly.  In any event, when are you realistically
15 hoping you'd have a settlement?  I would hope it would be
16 within the next couple of weeks, but, again, that depends a
17 little bit on who the counsel is that Mr. Mendoza is going to
18 have at the settlement conference.  If I attempt to find a
19 settlement judge, what period of time or what days would you
20 propose?  You can have whoever you want present.
21         MS. TVEDT:  And that's why, for this week, I knew
22 that myself and Mr. Robinson were available Tuesday and
23 Wednesday.
24         THE COURT:  I think it's unlikely we're going to find
25 a judge just sitting here waiting for me to call him up and

|    |                                                                        |
|----|------------------------------------------------------------------------|
| 1  | be a settlement judge.                                                 |
| 2  |     MS. TVEDT:  I could call the court when I get back to |
| 3  | the office.  I know what my schedule is, but not                       |
| 4  | Mr. Robinson's, for this week or the following week.  We're            |
| 5  | attending a conference in Lake Chelan Thursday through Sunday          |
| 6  | of this week.                                                          |
| 7  |     THE COURT:  Let me first find a judge, and then the |
| 8  | judge will contact your office and see if we can work out a            |
| 9  | date.                                                                  |
| 10 | Let me address Mr. Mendoza directly and just tell you,                 |
| 11 | sir, that under our local rules and upon the request of both           |
| 12 | parties, we make available a settlement judge, a different             |
| 13 | judge, not me, because I'll be handling the case if it goes            |
| 14 | to trial.  You have to consent to that procedure, and if you           |
| 15 | consent, you and your lawyer can show up, and anything that's          |
| 16 | said at that time before that settlement judge is off the              |
| 17 | record and will not be disclosed to me, unless you agree to a          |
| 18 | settlement and plea.  Obviously, I'll learn that that's                |
| 19 | happened.  Other than that, anything that's said is totally            |
| 20 | confidential and won't be provided to me in any way by                 |
| 21 | counsel or the judge.  And at any time during that settlement          |
| 22 | procedure, if you decide this isn't really working out the             |
| 23 | way you wanted it to, you can stop the settlement procedure.           |
| 24 | You can do that at any time.  Just tell your counsel you               |
| 25 | don't want to proceed any further in that process, and the             |

```
 1  process would end, and I'll only be told the parties weren't
 2  able to reach a settlement.  Do you have any questions?
 3          THE DEFENDANT:  No, sir.  I agree with those
 4  conditions.
 5          THE COURT:  All right.  Anything else we can
 6  accomplish today?  We had a pretrial conference date
 7  scheduled for June 19th at 11:00 a.m.  That deadline should
 8  be stricken with the continuance of the trial date.  Perhaps
 9  we can push off the motions deadline for 30 days or so.
10  Let's pick a new motions cutoff of July 10th.  Anything else?
11  And we'll set some sort of a status conference several weeks
12  before the trial, just to see where we are, if we haven't
13  been notified of a settlement.  Anything else we can
14  accomplish today?
15          MR. ROGOFF:  No, Your Honor.
16          MS. TVEDT:  Nothing further, Your Honor.
17          THE COURT:  All right.  We'll be in recess.  Have a
18  nice day.
19
20
                    (THE PROCEEDINGS CONCLUDED.)
                       C E R T I F I C A T E



            I, Nancy L. Bauer, CCR, RPR, Court Reporter for
```

the United States District Court in the Western District of Washington at Seattle, do hereby certify that I was present in court during the foregoing matter and reported said proceedings stenographically.

I further certify that thereafter, I have caused said stenographic notes to be transcribed under my direction and that the foregoing pages are a true and accurate transcription to the best of my ability.

Dated this 14th day of July 2010.

/S/   Nancy L. Bauer

Nancy L. Bauer, CCR, RPR
Official Court Reporter