13:21:49

1             UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON

2                 AT SEATTLE

3  _____

UNITED STATES OF AMERICA,      Case No. O6-466Z

4

       Plaintiff,         Seattle, Washington

5                       November 19, 2009

     vs.

6

DAVID R. MENDOZA,

7

       Defendant.

8  _____
              SENTENCING HEARING

9       VERBATIM REPORT OF PROCEEDINGS
     BEFORE THE HONORABLE THOMAS S. ZILLY

10       UNITED STATES DISTRICT JUDGE

11  _____

12  APPEARANCES:

13   For the Plaintiff:    Susan Roe
                   Roger Rogoff

14                Richard Cohen

15

16   For the Defendant:    Jeffery Robinson
                   Todd Maybrown

17                Colette Tvedt

18

   Reported by:         Nichole Rhynard, CCR, RMR, CRR

19                Federal Court Reporter
                206.370.8504

20                nichole_rhynard@wawd.uscourts.gov

21

22

  Proceedings recorded by mechanical stenography, transcript

23  produced by Reporter on computer.

24

25

```
 1              P R O C E E D I N G S
    _____
 2

 3         THE CLERK:  Case No. 06-466Z, United States of

 4   America versus David R. Mendoza.  For the record, Counsel,

 5   will you please stand and make your appearances.

 6         MS. ROE:  Good afternoon, Your Honor, Susan Roe on

 7   behalf of the United States.

 8         MR. ROGOFF:  Roger Rogoff.

 9         MR. COHEN:  And Richard Cohen.

10         MR. ROBINSON:  Good afternoon, Your Honor,

11   Jeffrey Robinson for Mr. Mendoza.

12         MS. TVEDT:  Good afternoon, Your Honor, Colette Tvedt

13   for Mr. Mendoza.

14         MR. MAYBROWN:  And good afternoon, Your Honor,

15   Todd Maybrown, also on behalf of Mr. Mendoza.  I've been

16   helping with the related case.  I have previously been before

17   the Court.

18         THE COURT:  You want to keep your voice up when you

19   speak.

20      Are the parties ready to proceed with sentencing in this

21   matter?

22         MR. ROBINSON:  We are, Your Honor.

23         MS. ROE:  We are, Your Honor.

24         THE COURT:  Mr. Robinson, did you want to say

25   something preliminary in nature before we started?  You
```

14:28:12  1    started to say something then Mr. Mendoza came into --

14:28:15  2         MR. ROBINSON:  No, no, Your Honor.

14:28:18  3         THE COURT:  All right.  Did the defendant receive the

14:28:24  4    presentence report provided as of October 23 and the

14:28:28  5    sentencing recommendations of Probation?

14:28:30  6         MR. ROBINSON:  We did, Your Honor.

14:28:33  7         THE COURT:  All right.  In addition, I received and

14:28:34  8    reviewed the plea agreement.  Of course, I took the plea

14:28:37  9    agreement, as I recall.  The sentencing memo of Mr. Mendoza

14:28:41  10   and various attachments, letters, all of which I have read,

14:28:45  11   the government's sentencing memo.

14:28:49  12   Anything else I should have received and I didn't?

14:28:52  13        MR. ROBINSON:  No, Your Honor, not from Mr. Mendoza.

14:28:54  14        THE COURT:  Are there any factual disputes of the

14:28:56  15   facts stated in the presentence report for purposes of

14:28:58  16   sentencing?

14:29:00  17        MR. ROBINSON:  Could I have just a second, Your

14:29:00  18   Honor?

14:29:14  19        THE COURT:  Sure.

14:29:14  20        MR. ROBINSON:  Your Honor, there was a -- it was an

14:29:21  21   amendment to the presentence report dealing with what is now

14:29:25  22   paragraph 116, the impact of the plea agreement.  And there

14:29:28  23   is a clarification --

14:29:31  24        THE COURT:  Just a moment, did you say 116?

14:29:34  25        MR. ROBINSON:  116.  And there is a clarification

14:29:43  1    that Ms. Moore added to the presentence report.  I -- it's a

14:29:46  2    bit technical, but I guess I would ask that the reference

14:29:53  3    that Mr. Mendoza's offense may have involved at least 3,000

14:29:58  4    kilograms.  I'd ask that that be stricken.  Because I think

14:30:02  5    the evidence is that Mr. Mendoza has acknowledged that he was

14:30:06  6    involved in the importation of over 1,000 kilograms.  There

14:30:10  7    is a difference in opinion about exactly how much it was.

14:30:14  8    But I don't think the government can indicate to you that

14:30:18  9    they have proof beyond a reasonable doubt that Mr. Mendoza

14:30:21  10   was involved in 3,000 kilograms.

14:30:24  11       I think Ms. Moore has appropriately indicated that this is

14:30:27  12   a possibility.  But I don't think that this report, which is

14:30:31  13   going to follow Mr. Mendoza through the Bureau of Prisons,

14:30:34  14   should have that kind of speculation in it about an amount of

14:30:38  15   marijuana that was neither pled in the indictment nor proven

14:30:43  16   nor that Mr. Mendoza has ever acknowledged.  So my only

14:30:48  17   request is that sentence be stricken.

14:30:51  18            THE COURT:  What's the government's position?

14:30:53  19            MS. ROE:  Your Honor, the government did not know

14:30:54  20   that the defense was going to ask for this.  The government

14:30:56  21   was not prepared to bring evidence or proof of that.  The

14:31:00  22   government believes it's quite clear it was closer to 3,000

14:31:03  23   pounds than 1,000 pounds.  Although the elements of offense

14:31:06  24   are more than 1,000 pounds.

14:31:08  25       When the Court looks at the facts and the other people,

14:31:10  1   there are 11 people serving prison terms who imported

14:31:14  2   marijuana or flew it over on Mr. Mendoza's behalf.  And those

14:31:19  3   people's testimony in addition to the one of Ms. Hinkley

14:31:23  4   (phonetic) acknowledged in the plea statement indicates it

14:31:27  5   was well in excess of a couple thousand pounds; it may have

14:31:30  6   been more than 3,000 pounds.

14:31:32  7           THE COURT:  Pounds or kilograms?

14:31:36  8           MS. ROE:  Kilograms.

14:31:37  9           THE COURT:  I think the statement is ambiguous

14:31:41  10  because it talks about may have involved.  It's the probation

14:31:47  11  officer's role to talk to and learn from what witnesses would

14:31:52  12  say.  And this is not a finding.  Of course this is a

14:31:59  13  11(c)(1)(c) plea.

14:32:03  14          MR. ROBINSON:  And, Your Honor, I do acknowledge that

14:32:04  15  there was a clarification that Ms. Moore had --

14:32:06  16          THE COURT:  I think it would be fair to say that

14:32:08  17  there's substantial reason to believe that the offense

14:32:12  18  involved substantially more than 1,200 kilograms of marijuana

14:32:20  19  that he's acknowledged in his plea agreement.  I'm going to

14:32:25  20  leave paragraph 116 in its present form.

14:32:28  21      Let me just state before I hear from counsel that having

14:32:32  22  reviewed the -- when I took the plea, I accepted the plea,

14:32:38  23  but reserved and deferred on whether I would accept the plea

14:32:44  24  agreement.  The plea agreement of course is pursuant to

14:32:48  25  paragraph 11(c)(1)(c) which binds me if I accept the plea

14:32:55   1    agreement to sentence the defendant, and that sentence is a

14:33:00   2    fixed amount.   And that amount is 168 months.

14:33:08   3            MR. ROBINSON:   That's correct, Your Honor.

14:33:09   4            THE COURT:   I'm satisfied having that reviewed all of

14:33:12   5    the materials, the plea agreement, the presentence report and

14:33:15   6    the sentencing memos that I should and I now do accept the

14:33:19   7    plea agreement and intend to sentence the defendant to the

14:33:26   8    amount that he has agreed to and the government has agreed

14:33:30   9    to.

14:33:30   10        Now, having said that, it may shorten in some way your

14:33:33   11   remarks.

14:33:34   12           MR. ROBINSON:   It does, Your Honor.

14:33:36   13           THE COURT:   And that was the purpose of my telling

14:33:38   14   you early.

14:33:39   15           MR. ROBINSON:   Thank you, very much.

14:33:40   16       Your Honor, Mr. Mendoza's parents, Albert Emanuel and

14:33:44   17   Maria Teresa Emanuel are in the courtroom.   His wife, and her

14:33:50   18   father are also in the courtroom.   His children are young

14:33:53   19   enough that we didn't think it was appropriate for them to be

14:33:56   20   here.

14:34:01   21       I want to make my remarks brief.   And I think the thing

14:34:05   22   that I would like to say about David Mendoza is that on the

14:34:12   23   one hand he's got nobody to blame but himself for sitting

14:34:16   24   here under these circumstances.   He had two prior convictions

14:34:21   25   of very similar behavior.   He had the knowledge when he came

14:34:25  1   out of prison after his second conviction that continuing

14:34:30  2   that behavior would likely end up in a very, very strict

14:34:36  3   sentence, and that is what he has bought and paid for with

14:34:39  4   his behavior and is what he's here to accept today.

14:34:44  5        I think that there is a temptation sometimes to view an

14:34:48  6   individual like Mendoza -- like Mr. Mendoza as nothing more

14:34:52  7   than the accumulation of his convictions.

14:34:57  8        THE COURT:  Let me just interrupt you for a moment.

14:34:59  9   You said two convictions.  He was convicted and sentenced by

14:35:03  10  Judge Rothstein to 70 months and then he got revoked in -- is

14:35:08  11  that the second -- there's just one felony conviction; is

14:35:13  12  that right?

14:35:13  13       MR. ROBINSON:  No, Your Honor, there are actually

14:35:15  14  two.  There is an earlier conviction I believe from the State

14:35:20  15  of Nevada.

14:35:21  16       THE COURT:  All right.

14:35:21  17       MR. ROBINSON:  And --

14:35:23  18       THE COURT:  And that doesn't count because it's --

14:35:28  19  all right.  That was a juvenile conviction.  Well, it wasn't,

14:35:32  20  he was age 25.  But we don't score it because of -- all

14:35:36  21  right.  Go ahead.

14:35:39  22       MR. ROBINSON:  Your Honor, the thing that I just want

14:35:39  23  to highlight for you is that I think Mr. Mendoza is a very

14:35:44  24  complicated man.  On the one hand, he has imported marijuana

14:35:49  25  in extremely large quantities into the United States, and he

has made significant amounts of money from that.

On the other hand, he has assisted people in his community who are homeless.  He has paid for reconstructive surgery for a person who needed facial reconstruction; somebody he had no familial relationship with.  He has reached out to people who, quite frankly, have needed assistance and help and done it in a selfless way that boggles the mind to some extent to try and figure out how can a man who will act in that regard then turn his quite significant abilities and talents to something as wasteful as importing marijuana into the United States.

I can't give you and I can't satisfy for myself with a real complete explanation of how this came about for a third time.  But what I can say to you is that including everything Mr. Mendoza has said to other judges who have been looking at him in similar circumstances, Mr. Mendoza understands where he is and why he's here.  He understands that he is likely going to say goodbye to his parents through bars.  Because they're elderly and they likely won't be around when he comes out of prison.

One thing that's different from his appearance in front of Judge Rothstein is that Mr. Mendoza has two children.  And I've had the pleasure of meeting both of them and having never interacted with a Down syndrome child before, I can tell you that it was a powerful experience to be in the room

with that young child.  And I know from talking to

Mr. Mendoza, from talking to his parents and his wife, the

depths of the love that Mr. Mendoza has for that child.  And

I know that he is suffering because he is not going to be

with that child to provide the significant help that that

child needs as that child grows up.

     And I say again, not meant for sympathy, he's got nobody

to blame but himself.  But I think that this is a man who has

a family that loves him, that supports him, and that will be

there for him to the extent they can when he comes out of

prison.  Mr. Mendoza is 45 years old at this point, and so he

is going to be in a significantly different place in his life

when he comes out of prison after serving his sentence.

     I thank the Court for accepting the plea agreement.  I

think that it is appropriate.  It's something that was

negotiated over a significant amount of time and effort with

the government.  And I would thank the government for

negotiating with us.  Judge Martinez conducted a settlement

conference.  And I think it was through those efforts that

we're here today with the sentence we're asking the Court to

impose.

     I would indicate that we will ask the Court to accept the

plea agreement as you've indicated that you have, but to not

sign the judgment today.  Because we are going to be asking

you to set a briefing schedule on an issue that we think is

| | |
|---|---|
| 14:39:08 | 1 |
| 14:39:11 | 2 |
| 14:39:15 | 3 |
| 14:39:20 | 4 |
| 14:39:24 | 5 |
| 14:39:30 | 6 |
| 14:39:32 | 7 |
| 14:39:36 | 8 |
| 14:39:40 | 9 |
| 14:39:43 | 10 |
| 14:39:47 | 11 |
| 14:39:51 | 12 |
| 14:39:56 | 13 |
| 14:39:59 | 14 |
| 14:40:00 | 15 |
| 14:40:00 | 16 |
| 14:40:14 | 17 |
| 14:40:17 | 18 |
| 14:40:20 | 19 |
| 14:40:24 | 20 |
| 14:40:32 | 21 |
| 14:40:33 | 22 |
| 14:40:34 | 23 |
| 14:40:39 | 24 |
| 14:40:41 | 25 |

significant raised in both the government's memo and in our memo alluded to in the presentence report, and that is the issue of where Mr. Mendoza will serve his sentence.  I think the government believes that this is an issue that is not before this Court; we disagree.  And Mr. Maybrown has actually been the person who has done the background work on this issue.  And so we would like to ask the Court to set a briefing schedule.  Because we believe that the Court has both the responsibility and the authority to order that Mr. Mendoza serve his sentence in the country of Spain.

So if the Court has further questions about that issue, with your permission I'd like to hand off to Mr. Maybrown because I think he is more up on those issues than I am.

THE COURT:  You better hand it off, because I'm not much inclined to do that.

MR. ROBINSON:  Thank you.

MR. MAYBROWN:  Good afternoon, Your Honor.  I think I've been asked to address this issue because I have a little bit more familiarity having dealt with this issue as it bubbled up through the forfeiture proceedings.

THE COURT:  Let me ask you this.  Let's just start with the plea agreement, Mr. Maybrown.  Is there anything in the plea agreement that deals with the subject of where he serves his sentence?

MR. MAYBROWN:  I don't think the plea agreement

14:40:42  1  speaks to that --

14:40:42  2      THE COURT:  Having taken the plea I think I asked

14:40:45  3  Mr. Mendoza under oath was there was any other agreement of

14:40:47  4  any kind that he had with the government other than what was

14:40:50  5  contained in the written plea agreement.  I do that every

14:40:54  6  time, I'm sure we would find it in the record if we took the

14:40:57  7  transcript.  Assuming that's the case, that subject was not

14:41:03  8  mentioned in any way, was it?

14:41:05  9      MR. MAYBROWN:  I cannot say.  I wasn't present when

14:41:06 10  the Court took the plea.  I would have to defer to

14:41:10 11  Mr. Robinson on that point.  But I think that this matter was

14:41:14 12  an agreement between the executive bodies of the government

14:41:18 13  of Spain and the United States and was before the Court

14:41:23 14  through information that the Court had even today before the

14:41:27 15  Court decided to accept the plea.

14:41:29 16      THE COURT:  And your position is that there is some

14:41:31 17  agreement between the executive branch of this government and

14:41:35 18  the executive branch of the Spanish government that would

14:41:42 19  require that he be allowed to serve his sentence in Spain?

14:41:47 20      MR. MAYBROWN:  That's correct, Your Honor.  And I

14:41:48 21  also believe that there's some case law that I can point the

14:41:50 22  Court to in briefing which would I think convince the Court

14:41:54 23  that it is a condition of the extradition that the Court

14:41:57 24  could enforce and would have the power to enter an order to

14:42:04 25  give effect to that agreement.

14:42:05  1        Now, the disagreement that we have with government I think

14:42:08  2    are twofold.  One, I saw in pleadings that the government

14:42:12  3    claims that there wasn't this agreement reached.  And we've

14:42:14  4    asked, I think Mr. Robinson asked for them to provide any

14:42:19  5    documentation to support that.  And I don't think that

14:42:20  6    there's been a response.  So first, I'd like to just at least

14:42:23  7    have an opportunity to see what that information is based

14:42:26  8    upon so we can present that to the Court so the Court would

14:42:29  9    know whether, in fact, there was an agreement.  It might be a

14:42:33 10    very short issue to resolve the fact the government does have

14:42:36 11    that information.  But everything we've seen --

14:42:38 12        THE COURT:  Well, if there was an agreement, couldn't

14:42:42 13    you come back into court and say, Judge, there's an

14:42:45 14    agreement?

14:42:46 15        MR. MAYBROWN:  Well, I think we could, Your Honor,

14:42:46 16    but I'm afraid that if the Court was to sign the judgment and

14:42:50 17    sentence that the government would then argue that the Court

14:42:52 18    has vested itself of jurisdiction, and at this point

14:42:55 19    regarding the case and it seems to me that the most prudent

14:42:58 20    way to handle this would be to see the briefing and decide

14:43:02 21    whether at the same time the Court signed the judgment it

14:43:05 22    felt it was appropriate to sign an order directing that

14:43:08 23    Mr. Mendoza be turned over to the proper authorities.

14:43:12 24        THE COURT:  Well, this issue's been on the table

14:43:13 25    since I know before last spring.  Because we had the question

14:43:20    1    of when he was coming back and what the conditions were and

14:43:26    2    the like.   Now, I took his plea quite a while ago.   And we

14:43:32    3    continued this hearing a couple of times and now you're

14:43:38    4    telling me on the day of the hearing for the first time you

14:43:40    5    don't want me to sign the judgment?   And that there might be

14:43:44    6    briefing on whether or not I should enforce some agreement

14:43:48    7    which you haven't given me any, you know -- I can tell you

14:43:54    8    that the materials I reviewed in early spring suggested that

14:44:02    9    there was no agreement between the government and it was not

14:44:07   10    a condition of his being returned to the United States.

14:44:10   11        But tell me again why it is that I should not sentence him

14:44:17   12    today and sign the judgment?

14:44:21   13            MR. MAYBROWN:   Your Honor, I would think that based

14:44:23   14    on all the information that we have there was an agreement

14:44:26   15    actually reached between the two governments and that was a

14:44:28   16    specific condition of the extradition.   And if that is

14:44:33   17    accurate, and for the first time I heard recently in

14:44:37   18    pleadings that I've seen from the government that they're

14:44:41   19    disagreeing with that position.

14:44:43   20        But obviously, we think that if, in fact, we're correct

14:44:47   21    then the Court would want to make an appropriate ruling

14:44:52   22    consistent with the extradition, since, for example, if the

14:44:55   23    extradition had been conditioned on him not serving more than

14:44:58   24    ten years the Court would not want to impose a sentence of 14

14:45:01   25    years if, in fact, the Court knew and had proof that was part

14:45:07  1    of the agreement.   And there were cases which deal with these

14:45:08  2    issues which make it very clear that the Court does have the

14:45:11  3    power and the authority to make a ruling in this regard.

14:45:16  4        Now, I understand that the government disagrees.  I just

14:45:19  5    thought that the most appropriate way to deal with it would

14:45:20  6    be to set a reasonable schedule -- Mr. Mendoza is sentenced

14:45:26  7    to a long sentence; he's going to be in custody regardless.

14:45:30  8    So it doesn't seem like any prejudice could be available to

14:45:33  9    either party if he was held pending the Court resolve the

14:45:33  10   issue.

14:45:38  11       Now, if the Court looks at the material and says, I don't

14:45:40  12   think there's an agreement, we'd like to know about it.  If

14:45:42  13   the Court looks at it and says, Yes, I think there is an

14:45:43  14   agreement here, then I think the Court would want to say,

14:45:46  15   What do I now that I believe that there was, in fact, an

14:45:48  16   agreement.

14:45:49  17            THE COURT:  Well, I would doubt very much whether I'd

14:45:51  18   have jurisdiction to decide that issue.  I mean, if there was

14:45:55  19   an agreement between the two governments you can go into some

14:45:58  20   federal court here or somewhere else and bring an appropriate

14:46:03  21   action to enforce an agreement.  He's been charged with

14:46:07  22   criminal offense.  And I'm going to sentence him and I'm

14:46:11  23   going to sign that judgment today.  So I understand your

14:46:14  24   arguments.  I just fail to believe that they merit my

14:46:20  25   delaying the formal signing of the judgment.

14:46:25   1        Counsel, did you finish your remarks?

14:46:28   2        MR. ROBINSON:  Your Honor, with your permission, I'll

14:46:30   3   just add one thing.  This was not the subject of anything

14:46:34   4   having to do with the plea agreement.  I want to be clear,

14:46:37   5   Mr. Mendoza in no way giving up his right to raise this issue

14:46:42   6   before you by signing that plea agreement.  He did not agree

14:46:45   7   with the government, well, I won't raise this issue in front

14:46:48   8   of Judge Zilly in exchange for the plea agreement.

14:46:51   9        So while you are right; there is no agreement between the

14:46:55  10   parties about this issue, the plea agreement does not prevent

14:47:00  11   Mr. Mendoza from asking you to address this issue.  And I

14:47:04  12   understand the Court's decision on that.  I suppose that if

14:47:08  13   necessary and appropriate we can come back to the Court and

14:47:12  14   ask you to amend the judgment if we find the authority that

14:47:16  15   would be persuasive to ask you to do that.

14:47:18  16        THE COURT:  Does your client wish to be heard?

14:47:23  17        MR. ROBINSON:  I think just briefly, Your Honor.

14:47:24  18        THE COURT:  Would you use the podium, please.

14:47:26  19        THE DEFENDANT:  Good afternoon, Your Honor.

14:47:26  20        THE COURT:  Good afternoon, sir.

14:47:36  21        THE DEFENDANT:  Where am I going to start here?  Let

14:47:38  22   me start with apologizing first to you.

14:47:42  23        THE COURT:  There are people behind you --

14:47:45  24        THE DEFENDANT:  I'm going to get to them, please.

14:47:46  25        THE COURT:  I'd start there.

14:47:51  1          THE DEFENDANT:  Okay.  I've got a long road to hoe

14:47:53  2   with these people behind me -- my parents, my family.  A long

14:47:58  3   time to at least begin to start some trust with them again.

14:48:05  4   Hopefully, hopefully, they will open to be able to do that

14:48:11  5   with me over these 14 years.

14:48:14  6       With you I know it's not easy to sentence a man to a

14:48:17  7   considerable amount of time in prison.  I apologize for my

14:48:23  8   actions making you do that.  I also need to apologize to

14:48:30  9   Ms. Roe because I know I've been a thorn in your side for

14:48:33  10  quite some time.  And I want to apologize to her.  I also

14:48:38  11  want to say thank you.  I didn't have an opportunity to say

14:48:41  12  thank you to her at the time that we were going through

14:48:43  13  arbitration.  She attempted to get a lighter range for Your

14:48:48  14  Honor to choose from.  And that was shot down by her boss.

14:48:53  15  But I want to thank her for attempting to do that for me.

14:48:56  16  I'm not saying that she would have recommended a lower

14:48:58  17  guideline range, but I suspect she would have gone for the

14:49:01  18  high end.  But she gave me the opportunity for that.

14:49:05  19      Again, I brought myself in front you.  I suspect it's not

14:49:11  20  often that somebody comes in front of a federal court twice

14:49:14  21  in their lifetime.  I'm sorry for this.  I have no excuse for

14:49:18  22  it.  Thank you.

14:49:25  23          MS. ROE:  Your Honor, he's an unusual defendant for

14:49:31  24  today.  This is a man who came to this country or was born in

14:49:35  25  this country and had every benefit America had to offer.  His

14:49:39  1   parents were immigrants, they were educated.  He was raised

14:49:42  2   in a loving family.  He received a good education and he had

14:49:44  3   the world at his feet.  And he is now here in court for the

14:49:47  4   third time facing a drug trafficking charge.

14:49:51  5       The government agreed to significant benefits by this

14:49:55  6   drug -- by this 11(c)(1)(c) plea.  He was facing a minimum

14:50:00  7   mandatory term of 20 years because of the prior sentencing

14:50:02  8   enhancements.  Not only are we agreeing to dismiss that upon

14:50:06  9   imposition of the judgment, but we are agreeing that we will

14:50:09  10  not continue the investigation into Mr. Mendoza's other

14:50:12  11  activities or into those of his wife.  And that had been a

14:50:15  12  separate investigation brought about before we knew she was

14:50:18  13  married to him.

14:50:20  14      He has agreed to forfeit four properties and I'm deferring

14:50:23  15  to Mr. Cohen on that, but I believe all four have clear title

14:50:28  16  today.

14:50:28  17              THE COURT:  I'm sorry, all four are?

14:50:28  18          MS. ROE:  Have clear title today, I believe.

14:50:33  19          MR. COHEN:  That is correct, Your Honor.

14:50:34  20          THE COURT:  Thank you.

14:50:34  21          MS. ROE:  And so we are asking the Court to impose

14:50:36  22  168 months and five years of supervised release.  And to

14:50:39  23  order the forfeiture of those properties as a term of the

14:50:43  24  sentence.

14:50:44  25              THE COURT:  All right, Mr. Mendoza, you want to --

14:50:49  1          THE PROBATION OFFICER:   Your Honor, I apologize, I

14:50:49  2   just noticed on my sentencing it should be a Criminal History

14:50:53  3   Category of II.   The sentencing range is correct, but I just

14:50:54  4   noticed on the sentencing recommendation green sheet listed

14:50:57  5   as a I.

14:50:59  6          THE COURT:   And with the acceptance which you didn't

14:51:03  7   give what would that --

14:51:09  8          THE PROBATION OFFICER:   He would be 235 to 293

14:51:13  9   months.

14:51:13 10          THE COURT:   37, II?  I'm not sure that I found those

14:51:18 11   guidelines for purposes of sentencing.   So I should do that

14:51:22 12   now.   Let me just -- other than the one objection you don't

14:51:29 13   have any other objections to the statement of facts or to the

14:51:33 14   facts contained in the presentence report; is that right?

14:51:35 15          MR. ROBINSON:   I do not, Your Honor.   I want to be

14:51:38 16   clear I think I may have misheard.   I think Mr. Mendoza has

14:51:42 17   earned acceptance of responsibility --

14:51:43 18          THE COURT:   Yes.

14:51:45 19          MR. ROBINSON:   -- and so I don't have any other

14:51:45 20   objection.

14:51:46 21          THE COURT:   Well, I am going to adopt for purposes of

14:51:50 22   the record facts stated in the presentence report.   And I

14:51:52 23   find that he has earned acceptance of responsibility and with

14:51:59 24   that adjustment his total offense level is a 37 for purposes

14:52:01 25   of guideline computation.   His Criminal History Category is

14:52:04  1    ll.   And his range under the guidelines would be 235 months

14:52:10  2    to 293 months.

14:52:12  3        But the parties have entered into an 11(c)(1)(c) plea

14:52:17  4    arrangement, which I think under the circumstances in

14:52:24  5    considering all the factors that I would normally have to

14:52:26  6    consider and in determining an appropriate sentence it is a

14:52:32  7    reasonable amount of time.   It's a tremendous amount of time.

14:52:36  8        On the other hand, Mr. Mendoza, you truly did have all the

14:52:44  9    opportunities in the world.   You graduated, I think you were

14:52:50  10   president of the Garfield High School.   You went into college

14:52:53  11   and got a degree.   And then somewhere shortly thereafter you

14:52:59  12   got involved in drugs.   And it's tragic.   It was tragic, you

14:53:05  13   know, you should have listened to Judge Rothstein when she

14:53:09  14   sent you to jail for 70 months.   That's a long time.

14:53:18  15       And tragically, some of the people that you met, I think

14:53:20  16   it was at Sheridan, come out with you and get into this new

14:53:26  17   venture which now brings you before this Court for a sentence

14:53:31  18   which is a tremendous amount of time.   But you don't have

14:53:35  19   anybody to blame but yourself.

14:53:45  20       And so without further ado, I'm going to as to Count 1

14:53:49  21   commit you to the Bureau of Prisons for a sentence of 168

14:53:52  22   months.   Upon release from prison you'll serve a period of

14:53:57  23   five years of supervised release subject to the standard

14:53:59  24   conditions in each of the special conditions contained in the

14:54:02  25   sentencing recommendations.   I find the defendant does not

| | |
|---|---|
| 14:54:05 | 1 |
| 14:54:08 | 2 |
| 14:54:17 | 3 |
| 14:54:20 | 4 |
| 14:54:26 | 5 |
| 14:54:32 | 6 |
| 14:54:36 | 7 |
| 14:54:38 | 8 |
| 14:54:47 | 9 |
| 14:54:49 | 10 |
| 14:54:52 | 11 |
| 14:54:54 | 12 |
| 14:54:55 | 13 |
| 14:54:59 | 14 |
| 14:55:04 | 15 |
| 14:55:06 | 16 |
| 14:55:11 | 17 |
| 14:55:15 | 18 |
| 14:55:25 | 19 |
| 14:55:30 | 20 |
| 14:56:01 | 21 |
| 14:56:01 | 22 |
| 14:56:06 | 23 |
| 14:56:08 | 24 |
| 14:56:11 | 25 |

have an ability to pay a fine.  I will waive the fine, assess

the $100 special assessment.  And advise you, sir, that to

the extent you have any rights of appeal that were not waived

in the plea agreement.  Any appeal must be filed within ten

days of today when I sign the judgment in this case.

    Do you want a recommendation on placement given the issues

that you raised earlier?

            MR. ROBINSON:  Your Honor, I do not believe so.  And

I'll just leave it at that.  I don't believe that we'd like

the Court to make a recommendation.

            THE COURT:  All right.

            MR. ROBINSON:  Your Honor, I should indicate that I

have in front of me a preliminary order of forfeiture.  I

have reviewed that with Mr. Mendoza.  I believe that these

deal with the four properties that were the subject of the

plea agreement.  I think the order is in its proper form.

I've signed it.  And I'm having Mr. Mendoza sign it now

before we hand it up to the Court.

            MS. ROE:  I've prepared a judgment which I've handed

to Ms. Tvedt.

            MR. ROBINSON:  Your Honor, I've reviewed the

judgment.  And I believe it correctly reflects your order.

            THE COURT:  Any objection to the order of

forfeitures?  I'm not sure if there's one or four.

            MR. ROBINSON:  There is one order of forfeiture.  It

| | |
|---|---|
| 14:56:14 | 1 |

relates to the four properties.

   THE COURT: Preliminary order?

   MR. ROBINSON: Preliminary order, yes, Your Honor.

   THE COURT: Any objection?

   MR. ROBINSON: There is no objection to that.

   MR. MAYBROWN: Your Honor, if I can note. We will be dismissing motions that are pending in related forfeiture proceeding now that the Court has accepted this plea that was a condition of the agreement. And I'll also be dismissing an appeal that's been pending in the Ninth Circuit relating to the same matters that's also a condition of the plea.

   THE COURT: Is there anything pending in my court?

   MR. MAYBROWN: There's a motion for reconsideration pending. It's been kicked off and so this Court ruled has on that. And --

   THE COURT: Can you have a motion to reconsider even pending if you've appealed it?

   MR. MAYBROWN: Well, that was one of the issues -- but because of new facts and, yes, you could.

   THE COURT: So you're going to dismiss the appeal and you're going to dismiss any -- the action here in this Court?

   MR. MAYBROWN: Exactly.

   THE COURT: I have signed the preliminary order of forfeiture.

  Ladies and gentlemen, I'm going to reflect that the

14:57:53  1    defendant has remained in the custody of the marshal.  I've
14:58:13  2    signed the judgment.  It will be filed.
14:58:16  3         Anything further to come before the Court?
14:58:17  4              MR. ROBINSON:  No, Your Honor.
14:58:19  5              MS. ROE:  No, Your Honor.
14:58:19  6              THE COURT:  All right.  We'll be in recess.
          7         (Proceedings concluded.)
          8                          *    *    *    *    *
          9                     C E R T I F I C A T E
         10

         11         I certify that the foregoing is a correct transcript from
         12    the record of proceedings in the above-entitled matter.
         13

         14    /S/  Nichole Rhynard, CCR, CRR, RMR
         15
         16
         17
         18
         19
         20
         21
         22
         23
         24
         25